**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MERCASIA USA, LTD. d/b/a AERVANA, *an Illinois Corporation*,

Plaintiff,

v.

JIANQING "JOHNNY" ZHU, *an individual*; and 3BTECH, INC., *an Indiana Corporation*,

Defendants.

Case No. 3:17-cv-718-_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff MercAsia USA, Ltd. d/b/a Aervana (hereafter "Plaintiff" or "MercAsia"), by and through its undersigned counsel, complains as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq*., to enjoin and obtain damages for Defendants' unauthorized manufacture, use, sale, offer to sell, and/or importation into the United States an infringing electronic wine aerator commercialized as the Waerator® ("Accused Product" or "Waerator® product").

## PARTIES

2. Plaintiff MercAsia is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 4513 Lincoln Ave, Suite 206, Lisle IL 60532.

3. Upon information and belief, Defendant Jianqing Zhu is an individual who is a resident and citizen of the state of Indiana within this judicial district, and he is known to use the alias "Johnny Zhu."

4. Upon information and belief, Defendant 3BTech, Inc. ("3BTech") is a corporation organized and existing under the laws of the State of Indiana, with its registered

office and principal place of business at 3431 William Richardson Drive, South Bend, Indiana 46628. According to documents filed with the Indiana Secretary of State, Mr. Zhu is the President of 3BTech. 3BTech operates under the Assumed Business Names "Better Choice Online" and "Warranty Pro," and it has sold and continues to sell the Accused Product through online channels such as Amazon and Groupon.

5. Upon information and belief, Mr. Zhu has owned and/or operated several other businesses in addition to Defendant 3BTech, including but not limited Xbay Inc., Zake International Inc., Zake IP Holdings, LLC, Everlast Inc., Everstrong Inc., Compu Capital, Inc, and Swagway, LLC. According to the online business search website of the State of Indiana (INBiz, at https://bsd.sos.in.gov/publicbusinesssearch), all of these businesses have the same principal office street address as that of 3BTech—3431 William Richardson Drive, South Bend, Indiana 46628. Upon information and belief, Mr. Zhu uses each of his businesses interchangeably, for instance selling the Accused Product through Defendant 3BTech, but holding the U.S. trademark registration for the Waerator® mark with Zake IP Holdings, LLC.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (conferring original jurisdiction of any civil action relating to patents, copyrights and trademarks). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. The Court has personal jurisdiction over Defendants because they reside in, are citizens of, and/or maintain a principal place of business in this judicial district. Upon information and belief, Defendants regularly conduct significant business activity in this judicial district, including selling and offering for sale the Accused Product.

8. Venue is proper is this judicial district pursuant to 28 U.S.C. §1400(b) because, among other things, Defendants transact business within this judicial district, are incorporated

in this judicial district, reside in and are citizens of this judicial district, maintain a regular and established place of business in this judicial district, and/or have committed acts of infringement in this judicial district.

## FACTUAL ALLEGATIONS

### *The History of Aervana®*

9. Plaintiff MercAsia was founded in 1997 by Louis J. Christen III and is a small organization offering a variety of high quality seasonal products. Among the products offers by MercAsia is the Aervana® Electric Wine Aerator ("the Aervana® product"), "the original one-touch, luxury wine aerator." (*See* Exhibit A attached hereto, Aervana Electric Wine Aerator-Aervana.) The Aervana® product is commercialized abroad under the name Vinaera™.

10. Drawing from his broad experience as a product developer, Mr. Christen and his team spent five years testing and developing various concepts with the aim to simplify wine aeration. The result was Aervana®, the first product ever to aerate and dispense wine simultaneously, with just the push of a button.




11. The advancements in technology embodied in the Aervana® product have been recognized internationally by the Patent Offices of the European Union, Japan, Taiwan, and China, issuing EP Patent No. 2,030,943, JP Patent No. 4,758,403, TW Patent No. 1,339, and CN Patent No. 101,348,228, respectively. Likewise, on February 8, 2011, the U.S. Patent

and Trademark Office duly and validly issued U.S. Patent No. 7,882,986 for a "Liquid Dispenser" (the '986 Patent"), which covers the Aervana® product. A true and correct copy of the '986 Patent is attached hereto as Exhibit B.

12. Messrs. Yi-Chung Huang and Yu-Jung Huang are the sole inventors listed on the '986 Patent. On March 27, 2014, however, Yi-Chung Huang and Yu-Jung Huang assigned all right, title, and interest in the '986 Patent to Jingle Master International Ltd. of Palm Grove House, Road Town, Tortola, British Virgin Islands ("Jingle Master"). A true and correct copy of the '986 Patent assignment to Jingle Master is attached hereto as Exhibit C.

13. Jingle Master granted an exclusive license to MercAsia pertaining to the '986 Patent ("the License"). The License was drafted to memorialize what had been the mutual understanding of both parties since the Aervana® product was first commercialized, which was that MercAsia exclusively held all substantial rights in the '986 Patent to make, use, sell, offer for sale, and import any commercial embodiment covered by the '986 Patent and to enforce those exclusive rights against third parties. Attached hereto as Exhibit D is a true and correct copy of the License.

14. The Aervana® product was awarded the Red Dot: Best of the Best award at the 2014 design competition. The Red Dot product design competition has existed since 1954 and its award is an internationally recognized quality seal awarded for products that are innovative, durable, effective, and beautifully designed.

15. The Aervana® product was also a finalist for the IHA Innovation Award in 2015. Home and housewares designers and suppliers, ranging from name brands to small entrepreneurs, are honored annually as winners of the IHA Innovation Awards at the International Home + Housewares Show in Chicago, Illinois.

16. In 2015, the Aervana® product won the Asian Catering Equipment ("ACE") Award. The ACE awards aim to recognize manufacturers and designers of foodservice and catering equipment who have innovatively improved impact on efficiency and design along

with reducing negative impact on the planet, and by shaping an innovative and sustainable future.

17. Today, the patent-protected Aervana® product is sold throughout the United States and Canada through "big box" stores and large online retailers alike, including Amazon.com, eBay, Wine Enthusiast, Sur La Table, and other reputable media and consumer publications.

18. Consumer packaging for the Aervana® product is marked with the '986 Patent number and has been so marked for all relevant time periods.

***The '986 Patent***

19. Plaintiff holds all substantial rights in and to the '986 Patent, including the right to sue for past and current damages relating to infringement.

Claim 1 of the '986 Patent reads as follows:

1. A liquid dispenser being mounted in a container having a top, a bottom and a mouth, and the liquid dispenser comprising

a shell being hollow, being adapted to be mounted on the mouth at the top of the container and having

a bottom;

a top end;

an injection tube being formed on and protruding longitudinally from the bottom of the shell and having

an internal surface;

an external surface; an upper end;

and a discharge tube being formed longitudinally on the internal surface of the injection tube and having

a top end; and

a bottom end; and

multiple air ports being formed through the shell between the bottom and the top end;

a spout assembly being connected to and communicating with the discharge tube of the injection tube and having

a spout being mounted on and protruding from the shell below the air ports, being connected to and communicating with the injection tube near the upper end and having

an inner end being connected to the upper end of the injection tube and communicating with the discharge tube; and

an outer end protruding from the shell; and

a pick-up tube being connected to and extending longitudinally from the bottom end of the discharge tube and having

an upper end connecting to and communicating with the discharge tube; and

a lower end being open;

an injection assembly being mounted in the shell and pumping air into the injection tube;

a power pack being mounted in the shell and being electrically connected to the injection assembly; and

an activating assembly being mounted on the top end of the shell, being electrically connected to the power pack, selectively sealing or opening an air passage to the injection tube and having

a pressure release tube being mounted in the shell, being connected to the injection tube and having

an air inlet being connected to the injection tube near the upper end opposite to the spout and communicating with the container through the injection tube; and

an air outlet extending to the top end of the shell and having a relief valve seat;

a switch being movably mounted in and protruding from the top of the shell, activating the injection assembly and having

a bottom; and

a central mounting tube being formed on and protruding from the bottom of the switch and extending toward the relief valve seat on the air outlet of the pressure release tube; and

a relief valve disk assembly being mounted in and protruding from the central mounting tube of the switch, selectively opening or closing the relief valve seat on the air outlet of the pressure release tube and having

a shaft being mounted in and protruding from the central mounting tube of the switch and having a distal end; and

a valve disk being mounted on the distal end of the shaft, closing the relief valve seat when the switch is pressed and opening the pressure release tube when the switch is released.

20. The '986 Patent is valid and fully enforceable.

***Defendant Zhu's Business Enterprises***

21. Upon information and belief, Defendant Jianqing "Johnny" Zhu operates numerous businesses in and around South Bend, Indiana, including Defendant 3BTech.

22. According to Indiana Secretary of State records, Defendant Zhu is the President of Defendant 3BTech (Exhibit E, Business Entity Report for Years 2016/2017).

23. Defendant Zhu is or has been associated with a number of other entities, including, but not limited to: Zake International, Inc.; Zake IP Holdings, LLC; ZakeUSA; Pro-Com Products, Inc.; Swagway, LLC; Shenzhen Zhouwu Technology Co., Ltd.;XBay, Inc.; DC 3B LLC; Criesen Holdings, LLC; Rollibot LLC; Direct Channel, Inc.; and Cassopolis Corner LLC, all of which seemingly have a firm connection to Mr. Zhu based on publicly available information.

24. Defendant Zhu and several of the entities he is or has been associated with have been accused of patent infringement, including:

- *Hangzhou Chic Intelligent Tech. Co., Ltd. v. Swagway, LLC*, United States District Court, Northern District of California, Case No. 4:16-cv-04804, subsequently transferred to the Northern District of Indiana, Case No. 3:17-cv-339.
- *In the Matter of Certain Personal Transporters, Components Thereof, and Packaging and Manuals Therefor*, International Trade Commission Investigation No. 337-TA-1007.
- *Segway, Inc., et al. v. Swagway LLC*, United States District Court, District of Delaware, Case No. 1:15-cv-01198.
- *Razor USA LLC, et al. v. Swagway LLC*, United States District Court, Central District of California, Case No. 2-15-cv-09209.
- *Drop Stop LLC v. Jian Quing "Johnny" Zhu; Zake International Inc., Zake USA, 3BTech, Inc., Shenzen Zhouwu Technology Co. Ltd., and Taiwu Keji Co., Ltd.*, United States District Court, Central District of California, Case No. 2:16-cv-07916.

### *The Infringing Product*

25. Defendants directly and indirectly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '986 Patent by way of the manufacture, selling, offering for sale, use and/or importing into the United States an electronic wine aerator product, currently commercialized under the name Waerator® ("the Accused Product").

26. Defendants sell and offer to sell the Accused Product on popular online retail websites, including but not limited to Amazon.com and Groupon, among others. True and correct copies of exemplary online retail listings for the Accused Product are attached hereto as Exhibits F and G.

27. The "Fine Print" section of the Groupon product page attached hereto as Exhibit F identifies the product as being sold "through the Groupon Store Waerator, operated by 3BTech, Inc."

28. The Amazon product page attached hereto as Exhibit G identifies the product as being sold by "Better Choice Online."

29. According to Indiana Secretary of State records, Better Choice is another assumed name of 3BTech. A true and correct copy of the Better Choice Certificate of Assumed Business Name is attached hereto as Exhibit H.

30. Better Choice Online also sells other of Defendant Zhu's brands on Amazon, products, including Swagtron, Viotek, Rollibot, and Turbolock. A true and correct copy of an Amazon.com Better Choice Online Storefront page showing these brands sold along with the Accused Product is attached hereto as Exhibit I.

31. According to Indiana Secretary of State records, Warranty Pro is an assumed name of 3BTech. A true and correct copy of the Warranty Pro Certificate of Assumed Business Name is attached hereto as Exhibit J.

32. The Accused Product user manual states that warranty services are provided by "Warranty Pro." A true and correct copy of the Accused Product user manual is attached hereto as Exhibit K.

33. By unlawfully and without permission making, using, selling, offering for sale and/or importing into the United States the Accused Product, Defendants directly and indirectly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the '986 Patent.

## COUNT I

### (Infringement of U.S. Patent No. 7,882,986—35 U.S.C. § 271)

34. Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 33 of this Complaint.

35. Plaintiff has all substantial rights in and to U.S. Patent No. 7,882,986.

36. Defendants have infringed and are currently infringing, directly and/or indirectly, literally and/or by way of the doctrine of equivalents, one or more claims of the '986 Patent, in violation of 35 U.S.C. § 271, *et seq*. Specifically, in violation of 35 U.S.C. § 271(a) and as shown in MercAsia's Motion for Preliminary Injunction and supporting papers filed therewith, all of which accompany the filing of this Complaint and are incorporated herein by reference, Defendants, literally and/or under the doctrine of equivalents and with knowledge of the '986 Patent, have infringed and continue to infringe at least Claim 1 of the '986 Patent by way of their manufacture, use, sale, offers for sale, and importation into the United States of the Accused Product.

37. Upon information and belief, Defendants have infringed and continue to infringe the '986 Patent in violation of 35 U.S.C. § 271(b) by actively inducing infringement of the '986 Patent, literally and/or under the doctrine of equivalents, with knowledge of the '986 Patent and knowledge that it was inducing the infringement of the '986 Patent, by, among other things, actively and knowingly aiding and abetting, assisting, and encouraging others, including without limitation its distributors, customers, and end users of the Accused Product to directly infringe the '986 Patent with respect to the making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without

license or authority, an electronic wine aerator falling within the scope of one or more claims of the '986 Patent, including Claim 1.

38. Upon information and belief, Defendants have infringed and continue to infringe the '986 Patent in violation of 35 U.S.C. § 271(c) by contributing to infringement of the '986 Patent, literally and/or under the doctrine of equivalents, by, among other things, making, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, the Accused Product, falling within the scope of one or more claims of the '986 Patent, with knowledge of the '986 Patent and knowing that such product and/or components are especially made or especially adapted for use in the infringement of the '986 Patent, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

39. Defendants' infringement of the '986 Patent has been and continues to be willful and deliberate. Specifically, and by no means limiting, Defendants have knowledge that Plaintiff's technology is covered by the '986 Patent by virtue of Plaintiff's marking, as well as by virtue of Defendants' own admissions in describing its Accused Product. (*See* Declaration of Louis J. Christen III in Support of MercAsia USA, Ltd.'s Motion for Preliminary Injunction, at ¶ 9E, filed concomitantly herewith.)

40. Defendants' acts of infringement have caused damage to Plaintiff in an amount to be proven at trial. As a consequence of Defendants' infringement, Plaintiff is entitled to recover lost profits and other damages adequate to compensate for the infringement complained of herein, but in no event less than a reasonable royalty.

41. Plaintiff has suffered and continues to suffer irreparable injury as a direct and proximate result of Defendants' infringement for which there is no adequate remedy at law. Unless Defendants are enjoined, Plaintiffs will continue to suffer such irreparable injury as a direct and proximate result of Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A. That Defendants have directly infringed the '986 Patent;

B. That Defendants have induced the infringement of the '986 Patent;

C. That Defendants have contributed to the infringement of the '986 Patent;

D. That Defendants and any of their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them and/or on any of their behalf, or acting in concert with any of them directly or indirectly, be permanently enjoined from infringing, contributing to the infringement, or inducing others to infringe the '986 Patent;

E. That Defendants be ordered to file with this Court and serve on Plaintiff within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

F. That Defendants be ordered to recall from any distributors and retailers and to deliver to Plaintiff for destruction or other disposition all remaining inventory of all infringing products, including all advertisements, promotional and marketing materials, as well as means of making same, and any tooling, molds, or other materials used in the means of making same;

G. That Defendants and any of their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them and/or on any of their behalf, or acting in concert with any of them directly or indirectly, deliver to Plaintiff all products that infringe the '986 Patent for destruction at Plaintiff's option;

H. That Defendants be ordered to pay compensatory damages to Plaintiff in an amount to be proven at trial, together with pre-judgment interest and post-judgment interest as allowed by law;

I. That Defendants be ordered to provide an accounting;

J. That Defendants be ordered to pay actual and punitive damages to Plaintiff to which it is entitled under applicable federal and state laws;

K. That the infringement by Defendants be adjudged willful and that the damages be increased under 35 U.S.C. § 284 to three times the amount found or measured;

L. That the Court determine this is an exceptional case under 35 U.S.C. § 285 and that an award of attorneys' fees and costs to Plaintiff is warranted in this action;

M. That the Court enter judgment against Defendants, and in favor of Plaintiff in all other remaining respects; and

N. For any such other and further relief as the Court deems just and equitable.

DATE: September 19, 2017

Respectfully Submitted,

/s/ Erin Linder Hanig
Erin Linder Hanig (29113-71)
LaDue Curran & Kuehn LLC
100 E. Wayne St., Suite 300
South Bend, IN 46601
Tel: 574-968-0760
Fax: 574-968-0761
ehanig@lck-law.com

John D. Denkenberger (*pro hac vice* pending)
Christensen O'Connor Johnson Kindness PLLC
1201 Third Avenue, Suite 3600
Seattle, WA 98101-3029
Telephone: 206.682.8100
Fax: 206.224.0779
john.denkenberger@cojk.com,

*Attorneys for Plaintiff*