UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MERCASIA USA, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-718 JD |
| | ) |
| JIANQING ZHU and 3BTECH, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff MercAsia USA, Ltd. is seeking a preliminary injunction in this patent infringement action. MercAsia holds a patent for a device that can attach to the top of a wine bottle and that, with the push of a button, will aerate and dispense the wine into a glass. MercAsia markets its version of the patented device under the name Aervana. In this action, MercAsia asserts that a competing device, which performs a similar function and is marketed under the name Waerator, infringes on its patent. It sued 3BTech, Inc., which sells the Waerator, and its owner, Jianqing "Johnny" Zhu,[1] and it now seeks a preliminary injunction barring any sales or marketing of the Waerator pending the conclusion of this action.

For the reasons explained below, the Court denies the preliminary injunction. The defendants have raised a substantial question as to whether the Waerator infringes the patent, so MercAsia has not adequately shown at this stage that it is likely to succeed on the merits. In addition, MercAsia's allegations of irreparable harm are too conclusory to justify the extraordinary remedy of preliminarily enjoining the defendants' sales of a competing product. Thus, the Court finds that a preliminary injunction is not warranted.

---

[1] 3BTech and Mr. Zhu jointly responded to the motion, and their arguments apply equally to both defendants, so for simplicity, the Court refers primarily to 3BTech.

## I. FACTUAL BACKGROUND

Plaintiff MercAsia is the owner of U.S. Patent No. 7,882,986, entitled "liquid dispenser." The patented device can attach to the top of a bottle, such as a wine bottle, and will dispense the wine into a glass with the push of a button. In particular, the device contains a pump that, when activated by pushing a button on top of the device, pumps air into the bottle. The air pressure then forces the wine up a straw that extends from the device to the bottom of the bottle, and the wine travels up the straw and out a spout that extends to the side of the device. Releasing the button turns off the pump and also allows the pressure inside the bottle to be released, which ceases the dispensing of the wine. The following diagrams from the patent show the device attached to the top of a bottle, and show a close-up cross section of the device itself:



[DE 27-2].

The patent includes one independent claim, Claim 1, and a number of dependent claims, though only Claim 1 is at issue here. Claim 1 reads as follows (with the disputed terms in italics):

> 1. A liquid dispenser being mounted in a container having a top, a bottom and a mouth, and the liquid dispenser comprising

a shell being hollow, being adapted to be mounted on the mouth at the top of the container and having

> a bottom;
>
> a top end;
>
> *an injection tube being formed on and protruding longitudinally from the bottom of the shell* and having
>
>> an internal surface;
>>
>> an external surface;
>>
>> an upper end; and
>>
>> a discharge tube being formed longitudinally on the internal surface of the injection tube and having
>>
>>> a top end; and
>>>
>>> a bottom end; and
>
> *multiple air ports being formed through the shell between the bottom and the top end*;

a spout assembly being connected to and communicating with the discharge tube of the injection tube and having

> *a spout being mounted on and protruding from the shell below the air ports*, being connected to and communicating with the injection tube near the upper end and having
>
>> an inner end being connected to the upper end of the injection tube and communicating with the discharge tube; and
>>
>> an outer end protruding from the shell; and
>
> a pick-up tube being connected to and extending longitudinally from the bottom end of the discharge tube and having
>
>> an upper end connecting to and communicating with the discharge tube; and
>>
>> a lower end being open;

an injection assembly being mounted in the shell and pumping air into the injection tube;

3

> a power pack being mounted in the shell and being electrically connected to the injection assembly; and
>
> an activating assembly being mounted on the top end of the shell, being electrically connected to the power pack, selectively sealing or opening an air passage to the injection tube and having
>
>> a pressure release tube being mounted in the shell, being connected to the injection tube and having
>>
>>> an air inlet being connected to the injection tube near the upper end opposite to the spout and communicating with the container through the injection tube; and
>>>
>>> an air outlet extending to the top end of the shell and having a relief valve seat;
>>
>> a switch being movably mounted in and protruding from the top of the shell, activating the injection assembly and having
>>
>>> a bottom; and
>>>
>>> a central mounting tube being formed on and protruding from the bottom of the switch and extending toward the relief valve seat on the air outlet of the pressure release tube; and
>>
>> a relief valve disk assembly being mounted in and protruding from the central mounting tube of the switch, selectively opening or closing the relief valve seat on the air outlet of the pressure release tube and having
>>
>>> a shaft being mounted in and protruding from the central mounting tube of the switch and having a distal end; and
>>>
>>> a valve disk being mounted on the distal end of the shaft, closing the relief valve seat when the switch is pressed and opening the pressure release tube when the switch is released.

[DE 27-2].

MercAsia sells a commercial embodiment of this patent under the name Aervana in the United States, and under the name Vinaera abroad. It markets the device as "the world's first electronic wine & spirits aerator," and emphasizes its ability to aerate wine in the couple of

seconds it takes to dispense the wine into a glass, as compared to the thirty minutes to an hour it would take to aerate wine in a traditional decanter bottle. The device is typically offered for retail sale at a price of $100.

Defendant 3BTech sells a very similar product under the name Waerator (pictured below), and MercAsia alleges in this action that the Waerator infringes on its patent. MercAsia asserts that 3BTech is marketing the Waerator to compete directly against its product, but at a much lower price of about $60. MercAsia is thus concerned that the Wearator is going to substantially undermine its sales of the Aervana. Given MercAsia's small size and the substantial investment it put into developing its patent, it moved for a preliminary injunction to forestall what it fears would be irreparable harm if it were forced to compete against the Waerator during the pendency of this case. That motion has now been fully briefed.[2]

 

---

[2] MercAsia also moved for a hearing on the motion, but only for the purpose of presenting oral argument. Because the parties' briefs fully and clearly set forth their respective positions, the Court finds that oral argument would be unnecessary, so that motion is denied. 3BTech also filed a motion to strike portions of MercAsia's reply brief, and for leave to file a surreply, but none of the matters discussed in that motion would affect the outcome of the preliminary injunction, so the Court denies that motion as moot.

## II. STANDARD OF REVIEW

The grant or denial of a preliminary injunction is within the sound discretion of the district court. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1363–64 (Fed. Cir. 2017). To obtain a preliminary injunction, a party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Authenticom, Inc. v. CDK Global, LLC*, No. 17-2540, 2017 WL 5112979, at *4 (7th Cir. Nov. 6, 2017). "Although in some instances '[t]hese factors, taken individually, are not dispositive' because the district court's conclusion results from a process of overall balancing, a movant is not entitled to a preliminary injunction if it fails to demonstrate a likelihood of success on the merits." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (quoting *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed.Cir.1988)).

## III. DISCUSSION

MercAsia seeks a preliminary injunction against any sales or marketing of the Waerator. It argues that it is likely to succeed on the merits of its claim for infringement because the Waerator contains each limitation of Claim 1 of its patent. It also argues that it will suffer irreparable harm in the absence of an injunction, including a loss of good will, impaired relationships with vendors and distributors, and a risk of insolvency. It further argues that the balance of harms favors entry of an injunction, as 3BTech would not be harmed by being prevented from selling an infringing product, and that the public interest favors an injunction. 3BTech disagrees on each point. The Court focuses its analysis on the likelihood of success on the merits and the existence of irreparable harm, as those factors are dispositive here.

A.  **Likelihood of Success on the Merits**

To receive a preliminary injunction, MercAsia must first establish that it is likely to succeed on the merits of its claim. To make that showing, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability. *Metalcraft of Mayville*, 848 F.3d at 1364; *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012). A preliminary injunction should not issue if the accused infringer "raises a substantial question concerning either infringement or validity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). 3BTech argues both that MercAsia has failed to demonstrate infringement, and also that the patent is invalid and unenforceable. Because the Court finds that 3BTech has raised a substantial question concerning the presence of infringement, the Court does not reach the parties' arguments as to the validity or enforceability of the patent.

To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim. *Id.* In support of its motion, MercAsia submitted a chart in which it identifies aspects of the Waerator that it contends correspond to each of the limitations of Claim 1. In response, 3BTech disputes infringement as to three of those limitations. If first argues that the Wearator lacks the limitation of "multiple air ports being formed through the shell between the bottom and the top end." The parties dispute the meaning of "multiple air ports," as that term is not defined in the patent or identified in any of the diagrams. 3BTech argues that air ports should be construed as meaning air vents along the side of the shell—which are absent from the Waerator—while MercAsia contends that the air ports should be interpreted so as to include two openings through the bottom

of the shell, through which the pressure release tube and the air pump's outlet tube flow through the bottom of the device and into the bottle.

Both parties offer colorable arguments on that point, but the Court need not resolve that particular dispute. Even assuming that MercAsia is correct—that the two holes through the bottom of the shell constitute "air ports"—MercAsia cannot prove literal infringement of the second disputed limitation: that the "spout [is] mounted on and protrud[es] from the shell *below the air ports*." (emphasis added). Notably, both parties agree that the Waerator's spout is affixed to the shell *above* the air ports, as shown in the following diagram (referring to the alleged air ports as "interface holes"):



[DE 19 p. 13; *see also* DE 20 p. 4 (conceding that "the spout of the [Waerator] is physically affixed at its inner end above the air ports")].

In attempting to establish that the Waerator nonetheless literally meets this limitation, MercAsia notes that even if the spout is affixed to the shell above the air ports, the outer end of the spout extends downward, and its opening is below the air ports:

8



MercAsia then argues that "the 'inner end' of the . . . spout is mounted on and protrudes from the shell *above* the air ports . . . , but the 'outer end' of the spout is mounted on and protrudes from the shell *below* the air ports," so the Waerator meets this limitation. [DE 20 p. 4]. However, in stating that the spout is "mounted on and protruding from the shell below the air ports," the limitation is most reasonably read as referring to where on the shell the spout is affixed. Though the outer end of the Waerator's spout does extend below the air ports, it would be nonsensical to say that the outer end of the spout is mounted on the shell below the air ports, when in fact the spout connects to the shell above the air ports and no portion of the spout contacts the shell below the air ports. MercAsia has therefore failed to show that the Waerator literally meets this limitation.

MercAsia also suggests that the Waerator meets this limitation under the doctrine of equivalents. However, it did not raise that argument until its reply brief. And even then, MercAsia did not develop the argument, nor did it provide any evidence that would be required to prove infringement under the doctrine of equivalents.[3] *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328–29 (Fed. Cir. 2007) (noting that, to prove infringement under the doctrine of equivalents, a party must generally present "particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the

---

[3] That is not to say that MercAsia cannot ultimately prevail by showing infringement under the doctrine of equivalents—just that it has not done so for the purposes of this motion.

equivalents."). Accordingly, the Court finds that 3BTech has raised a substantial question as to whether the Waerator infringes on MercAsia's patent, meaning that MercAsia has not established that it is likely to succeed on the merits of its claim. MercAsia is therefore not entitled to a preliminary injunction. *Amazon.com*, 239 F.3d 1350 ("If [the defendant] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue.").

**B.      Irreparable Harm**

For completeness, the Court also notes that MercAsia has made only a weak showing of irreparable harm. In support of this element, MercAsia offers an affidavit from its principal, in which he outlines various types of harm that could accrue if MercAsia's Aervana were forced to compete against the Waerator, which performs the same function but is sold at a much lower price. He asserts that, if forced to compete against that product, MercAsia will lose sales or have to alter its product, which "will result in the dissolution of currently existing manufacturing and distribution relationships as well as a reduction in [MercAsia's] workforce." [DE 7-1]. He also asserts that MercAsia will lose good will, as customers may view its prices as too high, and that it will lose repeat business from customers who would have otherwise bought the Aervana.

These assertions suffer from two shortcomings. First, as 3BTech argues, they are conclusory, as the affidavit offers little more than bottom-line assertions that these harms will come to pass. As 3BTech notes, there are already multiple other products on the market that purport to perform substantially the same functions as the Aervana—electric devices that sit atop wine bottles and aerate and dispense wine—and that are priced much lower than the Aervana. [DE 19-24, -25, -26]. MercAsia does not explain why, in light of the competition that already exists, the addition of the Waerator to that market would lead to such drastic consequences to

MercAsia. Likewise, it does not attempt to identify to what extent its sales would be affected by the Waerator, or how losing a particular amount of sales would translate to the harms it identifies; it largely offers bare assertions that competing against the Waerator would result in layoffs, endanger its solvency, and cost it good will, among others. Further, the basis for its alleged loss of good will is that customers "may potentially" view its prices as unjustified and exploitive if a similar product is offered at a lower price, but that harm is speculative by MercAsia's own description, and as just noted, there are already other similar products at lower prices than the Aervana, so this form of harm is doubtful.

Second, MercAsia makes little effort to show that the harms it identifies would be irreparable, as is required to justify a preliminary injunction. For example, it asserts that having to compete against the Waerator would result in the dissolution of existing manufacturing and distribution relationships. However, it never suggests that those relationships could not be reestablished following the entry of a final judgment in its favor. MercAsia also suggests that its solvency would be jeopardized, but as the Seventh Circuit recently noted, even insolvency does not always equate to irreparable harm if a business could be revived with an award of damages in a final judgment. *Authenticom*, 2017 WL 5112979, at *4. To satisfy this element, MercAsia needs to show not only that it would be harmed, but also that the harm would be irreparable, and it devoted little attention to that latter aspect of this element. Given this relatively weak showing of irreparable harm, MercAsia would need to establish a very high likelihood of success on the merits in order to show that the balance of equities favors entry of an injunction. As discussed above, it has not done so, so for this additional reason, the motion for a preliminary injunction must be denied.

## IV. CONCLUSION

For those reasons, the Court DENIES MercAsia's motion for a preliminary injunction. [DE 4]. MercAsia's motion for oral argument [DE 21] is DENIED as unnecessary, and the defendants' motion to strike [DE 28] is DENIED as moot.

SO ORDERED.

ENTERED: November 13, 2017

                                            /s/ JON E. DEGUILIO
                                  Judge
                                  United States District Court