UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MERCASIA USA LTD, | ) |
| | ) |
|     Plaintiff and Counter Defendant, | ) |
| | ) |
| v. | )   Case No. 3:17-CV-718-JD-MGG |
| | ) |
| 3BTECH, INC., | ) |
| | ) |
|     Defendant and Counter Claimant. | ) |

## OPINION AND ORDER

The Plaintiff and the Defendant contest several terms in a patent. Specifically, the parties dispute the definition of "shell" and "air ports." For the reasons stated below, the Court agrees with the Plaintiff's interpretation of the disputed terms.

### I. BACKGROUND

The Plaintiff produces the Aervana Electric Wine Aerator. *See* Ex. A, p. 6, DE 27-1. In essence, this product attaches to a wine bottle and will pour wine with the press of a button. *See id.* This aerator is protected by U.S. Patent No. 7,882,986. *See* Ex. A, Patent, p. 2, DE 74-1.[1] The Defendant also produces a wine aerator that is known as the Waerator. *See* Ex. F, pp. 2–14, DE 27-6. On October 20, 2017, the Plaintiff filed an Amended Complaint in which it alleged that the Defendant infringed upon its patent. *See* Am. Compl., pp. 11–13, DE 27. In relevant part, the Plaintiff's patent provides as follows:

> A liquid dispenser being mounted in a container having a top, a bottom and a mouth, and the liquid dispenser comprising a *shell* being hollow, being adapted to be mounted on the mouth at the top of the container and having a bottom; a top end; an injection tube being formed on and protruding longitudinally from the bottom of the shell and having an internal surface; an external surface; an upper end; and a discharge tube being formed longitudinally on the internal surface of the injection tube and having a top

---

[1] The Court will cite to the CM/ECF electronic page header rather than the page number listed on the actual document.

end; and a bottom end; and multiple *air ports* being formed through the shell between the bottom and the top end;

Ex. A, Patent, p. 14, DE 74-1 (emphases added; spacing modified for clarity).

As the case has progressed, the parties now dispute two key terms. Specifically, the parties dispute the definition of "shell" and "air ports." *See* Joint Status Report, p. 2, DE 81. Neither term is specifically defined within the Plaintiff's patent. *See* Ex. A, Patent, pp. 1–16, DE 74-1. The Defendant argues that shell should be construed as "a protecting case or cover." *See* Joint Status Report, p. 2, DE 81; *see also* Def.'s Responsive Br., p. 13, DE 76.[2] In contrast, the Plaintiff argues that shell should be defined as "a protecting or enclosing case or cover." *See* Joint Status Report, p. 2, DE 81. Further, the Defendant argues that air ports should be defined as "holes specifically formed for the controlled passage of air." *See id.* The Plaintiff believes that air ports should be defined as "an opening for the passage of air." *See id.*

## II.  LEGAL STANDARD

As a matter of law, the Court must construe the claims of the patent for the jury. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995). Claim construction is crucial because it "defines the scope of the protected invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).

In interpreting a disputed claim, the court must first look at the intrinsic evidence of record—the patent itself, including the claims, the specification, and (if in evidence) the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The process begins with the words of the claims. *Teleflex, Inc. v. Ficosa North American Corp.*,

---

[2] The Defendant previously offered an alternative definition of "shell" and "air ports." *See* Def.'s Br., p. 11, DE 73. To avoid any confusion, the Court notes that these prior definitions have been disregarded by the Defendant. *See* Def.'s Responsive Br., pp. 1–2, DE 76. Alternatively, the Defendant is bound by its most recent court filings. *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306–07 (Fed. Cir. 2007).

299 F.3d 1313, 1324 (Fed. Cir. 2002). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations and citations omitted); *Teleflex*, 299 F.3d at 1324 ("The claim language defines the bounds of claim scope."). Absent an express intent otherwise, claim terms should be given "the ordinary and customary meaning . . . that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. "[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

However, the claims do not stand alone and they "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). The specification includes the drawings and the written description of the invention. *Playtex Products, Inc. v. Procter & Gamble, Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005). The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). It can resolve ambiguities between the ordinary and customary meaning of words if the words used in the claim are not sufficiently clear to allow the scope of the claim to be determined from words alone. *Teleflex*, 299 F.3d at 1325. Yet, there's a difference "between using the specification to interpret the meaning of a claim," which is permissible, and "importing limitations from the specification into the claim," which is not. *Phillips*, 415 F.3d at 1323. "[T]he general principle is that limitations from the specification are not to be read into the claims." *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) (citation omitted).

Finally, the court must look to the patent's prosecution history, which "consists of the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* A patentee may modify the "meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

Nonetheless, if intrinsic evidence does not resolve the ambiguity in a disputed claim term, the court may then look to extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, and treatises. *Vitronics*, 90 F.3d at 1584. Extrinsic evidence may help the court better understand "the way in which one of skill in the art might use the claim terms." *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) (citations omitted). But extrinsic evidence may not be used to "contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322–23 (quoting *Vitronics*, 90 F.3d at 1584, n.6). As the Federal Circuit explained in *Phillips*: "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (citation omitted).

### III.  CONSTRUCTION OF "SHELL"

The Defendant argues that shell should be construed as "a protecting case or cover." *See* Joint Status Report, p. 2, DE 81. In contrast, the Plaintiff argues that shell should be defined as "a protecting or enclosing case or cover." *See id.*

In relevant part, the Plaintiff's patent provides as follows:

> A liquid dispenser being mounted in a container having a top, a bottom and a mouth, and the liquid dispenser comprising a *shell* being hollow, being adapted to be mounted on the mouth at the top of the container and having a bottom; a top end; an injection tube being formed on and protruding longitudinally from the bottom of the shell and having an internal surface; an external surface; an upper end; and a discharge tube being formed longitudinally on the internal surface of the injection tube and having a top end; and a bottom end; and multiple air ports being formed through the shell between the bottom and the top end;

Ex. A, Patent, p. 14, DE 74-1 (emphasis added; spacing modified).

The Plaintiff argues that the aerator's "shell, as disclosed in the patent, 'encloses' and 'protects' a number of components in the aerator device." Pl.'s Br., p. 10, DE 74. The Court has reviewed the Plaintiff's patent, the relevant drawings, and the written description of the Plaintiff's wine aerator. The Plaintiff's patent, as noted above, describes a shell that both encloses and protects the internal components of the aerator. Ex. A, Patent, p. 14, DE 74-1. The relevant drawings also show a shell that encloses and protects the internal components of the aerator. Put simply, the shell "encloses" and "protects" the internal components of the aerator. Based upon this, the Court construes "shell" as "a protecting or enclosing case or cover."

Assuming for the moment that any ambiguity exists, the Court is persuaded by the dictionary definition cited by the Plaintiff. In relevant part, Webster's College Dictionary defines "shell" as a "protecting or enclosing case or cover." Webster's College Dictionary 1208 (1999), *available at* DE 74-3. The Court is not persuaded by the Defendant's strained interpretation of "shell." *See* Def.'s Responsive Br., pp. 4–5, DE 76 (arguing that the definition of shell should not

include the term "enclosing" because the shell on the Plaintiff's aerator does not *completely enclose* the internal components of the aerator). Thus, based upon the ordinary and customary meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, the Court construes "shell" as "a protecting or enclosing case or cover."

### IV.  CONSTRUCTION OF "AIR PORTS"

The Defendant argues that air ports should be defined as "holes specifically formed for the controlled passage of air." *See* Joint Status Report, p. 2, DE 81. The Plaintiff believes that air ports should be defined as "an opening for the passage of air." *See id.* The Court agrees with the Plaintiff's definition.

In relevant part, the Plaintiff's patent provides as follows:

> A liquid dispenser being mounted in a container having a top, a bottom and a mouth, and the liquid dispenser comprising a shell being hollow, being adapted to be mounted on the mouth at the top of the container and having a bottom; a top end; an injection tube being formed on and protruding longitudinally from the bottom of the shell and having an internal surface; an external surface; an upper end; and a discharge tube being formed longitudinally on the internal surface of the injection tube and having a top end; and a bottom end; and *multiple air ports being formed through the shell between the bottom and the top end*;

Ex. A, Patent, p. 14, DE 74-1 (emphasis added; spacing modified).

The Court has reviewed the terms of the patent, the relevant drawings, and the written description of the wine aerator. Notably, the terms of the patent merely describe "multiple air ports" that allow for the passage of air. Contrary to the Defendant's argument, there is no mentioning of "holes specifically formed for the controlled passage of air." Based upon this and the language of the Plaintiff's patent, the Court concludes that "air ports" are mere openings that allow for the passage of air. *See id.* at 12 (noting that liquid is dispensed by pumping air into a vessel). Even if an ambiguity existed, the Court would be persuaded by the dictionary definition cited by the Plaintiff. In relevant part, Webster's New World Dictionary and Thesaurus defines

"port" as "an opening, as in a valve face, for the passage of steam, etc." Webster's New World Dictionary and Thesaurus 478 (1996), *available at* DE 74-4. Therefore, based upon the ordinary and customary meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, the Court construes "air port" as "an opening for the passage of air."

The Defendant argues that the Plaintiff's definition of air ports is too broad because "[i]f Plaintiff's construction were adopted, any incidental or accidental gap between mating parts would be considered an 'air port.'" Def.'s Responsive Br., p. 8, DE 76. In essence, the Defendant argues that its aerator only has incidental gaps that allow for the passage of air, and therefore such incidental gaps are not "air ports." *See id.* Certainly, this is a strong argument as it relates to whether the Defendant's product infringed upon the Plaintiff's patent. However, the Court cannot confuse claim construction with patent infringement. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("[P]atent infringement analysis involves two steps: claim construction, and application of the construed claim to the accused process or product."); *see also Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049 (Fed. Cir. 2009) (concluding that arguments premised upon noninfringement do not impact claim construction analysis). The Court concludes that the Defendant's remaining arguments are an attempt to improperly limit the scope of the Plaintiff's patent. *See Kara Tech. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

## V.  THE REQUEST FOR AN EVIDENTIARY HEARING

Finally, the Court rejects the Defendant's request to present expert testimony at an evidentiary hearing. "Trial courts have the discretion to hear expert testimony in connection with claim construction issues." *Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1319 (Fed. Cir. 2006) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318–19 (Fed. Cir. 2005)). "District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol." *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001). The district court has the inherent power to manage its docket and may enforce local rules to facilitate the just, speedy, and inexpensive disposition of all matters before it. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1320–21 (Fed. Cir. 2016); *see also Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324 (Fed. Cir. 2016). Local Patent Rule 4-1(c) requires that the parties "complete and file a joint claim-construction and prehearing statement." N.D. Ind. L.P.R. 4-1(c). As relevant here, this rule requires the following information: "[i]f witnesses are to be called at the claim-construction hearing, the identity of each such witness, and for each witness, a summary of his or her testimony including, for any expert witness, a report containing the expert's claim-construction opinions and the reasons for them." N.D. Ind. L.P.R. 4-1(c)(4).

Within the parties Corrected Joint Claim Construction and Prehearing Statement, the Defendant stated that it did "not intend to call any witnesses (fact or expert) at the Claim Construction Hearing, but reserves its right to call a rebuttal witness (fact or expert) should MercAsia call such a witness." *See* Corrected Joint Claim Construction and Prehearing Statement, p. 4, DE 65. The Defendant's cursory statement fails to comply with Local Patent

Rule 4-1(c)(4). Moreover, the Defendant's failure resulted in unfair surprise and prejudice to the Plaintiff. Thus, in an exercise of discretion, the Court rejects the Defendant's request for expert testimony because the Defendant failed to comply with Local Patent Rule 4-1(c)(4).

Second, the Court finds that an evidentiary hearing would be an inefficient use of judicial resources. For example, the technology in this case is relatively simple and the language of the patent is straightforward. *See J.G. Peta, Inc. v. Club Protector, Inc.*, 65 F. App'x 724, 727 n.2 (Fed. Cir. 2003) ("In this case, the district court properly concluded that a hearing was not necessary in light of the simple technology and relatively straightforward claim language at issue. Extrinsic evidence was unnecessary, and the district court did not err in declining to conduct a hearing to consider it."). Thus, as a matter of docket management, the Defendant's request for an evidentiary hearing is denied.

## VI.  CONCLUSION

For the reasons stated above, the Court construes "shell" as "a protecting or enclosing case or cover." Likewise, the Court construes "air ports" as "an opening for the passage of air." Finally, the request to present expert testimony at an evidentiary hearing is denied.

SO ORDERED.

ENTERED:  June 30, 2020

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court