UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MERCASIA USA LTD, ) | |
| ) | |
| Plaintiff and Counter Defendant, ) | |
| ) | |
| v. ) | Case No. 3:17-CV-718-JD-MGG |
| ) | |
| 3BTECH, INC., ) | |
| ) | |
| Defendant and Counter Claimant. ) | |

**OPINION AND ORDER**

This matter is before the Court on the 3Btech's Motion for a Temporary Restraining Order and Preliminary Injunction [DE 82], filed on May 21, 2020. For the reasons stated below, 3BTech's request is DENIED.

**I. BACKGROUND**

MercAsia produces the Aervana Electric Wine Aerator. *See* Ex. A, p. 6, DE 27-1. In essence, this product attaches to a wine bottle and will dispense wine with the press of a button. *See id.* This aerator is protected by U.S. Patent No. 7,882,986. *See* Ex. A, Patent, p. 2, DE 74-1.[1] 3BTech produces a wine aerator known as the Waerator. *See* Ex. F, Advertisements, pp. 2–14, DE 27-6. 3BTech also produces the Waerator W2. *See* Ex. 3, W2 Waerator Listing, p. 2, DE 82-10.

On October 20, 2017, MercAsia filed an Amended Complaint in which it alleged that the Waerator infringed upon its patent. *See* Am. Compl., pp. 11–13, DE 27. On November 3, 2017, 3BTech filed an Answer and brought several counterclaims for declaratory judgment. *See* Answer to Am. Compl., pp. 20–21, DE 36. The counterclaims did not involve the Waerator W2.

---

[1] Throughout this Opinion and Order, the Court will cite to the CM/ECF electronic page header rather than the page number listed on the actual document.

At some point during the course of this litigation, MercAsia requested that Amazon remove the Waerator W2 from its website due to alleged patent infringement. *See* Ex. C, Amazon Takedown Notice, p. 2, DE 82-5. Venders are required to submit to various policies in order to sell their products on Amazon. *See* Ex. 1, Decl. of Jianqing Zhu ¶ 3, DE 82-2. Amazon had previously established an "Intellectual Property Policy for Sellers." *See* Ex. B, Intellectual Property Policy for Sellers, p. 2, DE 82-4. This policy states that vendors "may not violate the IP rights of brands or other rights owners. Violating this policy may result in loss of selling privileges or other legal consequences." *Id.* The policy provides in relevant part as follows: "If you receive a notice or warning for infringement and you believe the rights owner or Amazon made an error, you may appeal or dispute the claim." *Id.* For alleged patent infringement, the policy provides for appeals as follows: "Reply to the notification you received, with specific reasons as to why you believe a mistake was made. You may also provide a court order demonstrating that your product is non-infringing or that the asserted patent is invalid or unenforceable." *Id.* at 3. Pursuant to this policy, Amazon would remove infringing products and take remedial action against offending vendors. *See id.* at 3–5. Amazon also has a "Services Business Solutions Agreement." *See* Ex. A, Amazon Services Business Solutions Agreement, p. 1, DE 82-3. In relevant part, this policy provides as follows:

> Amazon has the right to determine the design, content, functionality, availability and appropriateness of its websites, selection, and any product or listing in the Amazon Stores, and all aspects of each Service, including your use of the same. Amazon may assign any of these rights or delegate any of its responsibilities.

*Id.* at 24 (stray comma omitted).

In May 2020, after MercAsia complained of alleged patent infringement, Amazon removed the Waerator W2 from its website. *See* Ex. C, Amazon Takedown Notice, p. 2, DE 82-5; Ex. D, Amazon Takedown Notice, p. 2, DE 82-6 (noting that the listings were removed

2

because "[o]ne or more of your listings may be infringing the intellectual property rights of others."). Amazon also provided 3BTech with the following information: "If you believe there has been an error, please tell us why. Your explanation should include . . . [an] [e]xplanation of why you were warned in error. We will investigate to determine if an error occurred." Ex. D, Amazon Takedown Notice, p. 2, DE 82-6. On May 13, 2020, 3BTech sent a letter to Amazon, arguing that that its products do not violate MercAsia's patent. *See* Ex. E, Letter to Amazon, p. 2, DE 82-7. 3BTech requested that Amazon "deny further deactivation requests by [MercAsia] until the Court has adjudicated this matter." *Id.* On May 19, 2020, Amazon informed 3BTech that it had reviewed 3BTech's appeal, but that 3BTech failed to provide "proof of authenticity." Ex. F, Email from Amazon, p. 2, DE 82-8. Amazon requested that 3BTech explain "[h]ow your listing(s) have not violated [MercAsia's] intellectual property." *Id.* Amazon allowed for 3BTech to provide evidence to "clearly prove that your products do not infringe any intellectual property rights." *Id.* The current status of 3BTech's appeal to Amazon is unknown to the Court at this time.

On May 21, 2020, 3BTech filed the instant Motion for a Temporary Restraining Order and Preliminary Injunction [DE 82]. 3BTech argued that under Indiana law, MercAsia tortiously interfered with 3BTech's contract with Amazon by requesting that the Waerator W2 be taken down due to alleged patent infringement. *See* Def.'s Br., p. 4, DE 83. In relevant part, MercAsia argues that, even if the factual allegations are taken as true, it did not tortiously interfere with 3BTech's contract with Amazon. *See* Pl.'s Response Br., p. 16, DE 88. Rather, MercAsia argues that Amazon properly removed the product. *See id.* at 4–5. This matter is fully briefed and ripe for ruling.

3

## II.  DISCUSSION

In the interest of judicial efficiency, the Court will only address the arguments necessary for the resolution of the instant motion. 3BTech argues that, under Indiana law, MercAsia committed tortious interference by requesting that Amazon remove the Waerator W2 from its website. MercAsia argues that, even if the factual allegations are taken as true, this does not constitute tortious interference. Based upon the current record, the Court concludes that 3BTech has almost no chance of succeeding on the merits. Further, an injunction would not be in the public interest. As such, 3BTech's request for injunctive relief is denied.

**A.     The Applicable Law**

"The standard for determining whether a temporary restraining order is appropriate is analogous to the standard applicable when determining whether preliminary injunctive relief is appropriate." *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2015 WL 3999518, at *2 (N.D. Ind. July 1, 2015) (citing *YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000)).[2] "In order to obtain a preliminary injunction, a plaintiff must show three things: (1) without such relief, he will suffer irreparable harm before his claim is finally resolved; (2) he has no adequate remedy at law; and (3) he has some likelihood of success on the merits." *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)). Whether a party has some likelihood of success on the merits "is an admittedly low requirement and is simply a threshold question." *Girl Scouts of Manitou Council*, 549 F.3d at 1096 (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)).

---

[2] "Because the grant, denial, or modification of a preliminary injunction is not unique to patent law, we apply regional circuit law when reviewing and interpreting such decisions." *Macom Tech. Sols. Holding, Inc. v. Infineon Tech. AG*, 881 F.3d 1323, 1328 (Fed. Cir. 2018).

"If a plaintiff makes such a showing, the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "This assessment is made on a sliding scale: 'The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Id.* (quoting *Girl Scouts of Manitou Council*, 549 F.3d at 1086). "Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Id*. "This type of relief must not lightly be granted: the movant bears the burden of showing that it is warranted." *Harlan*, 866 F.3d at 758 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Under Indiana law, intentional interference with a contract is an actionable tort. *Guinn v. Applied Composites Eng'g, Inc.*, 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (quoting *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)). "The five elements necessary for recovery for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's *intentional inducement of breach of the contract*; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Bilimoria Comput. Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156 (Ind. 2005) (citing *Winkler*, 638 N.E.2d at 1235) (emphasis added). "The elements of a breach of contract claim are the existence of a contract, the defendant's breach, and damages to the plaintiff." *WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 695 (Ind. Ct. App. 2014) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)). "When construing a contract, unambiguous contractual language is conclusive upon the parties and the courts." *McKeighen v.*

*Daviess Cty. Fair Bd.*, 918 N.E.2d 717, 721 (Ind. Ct. App. 2009) (citing *S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445 (Ind. Ct. App. 2005)).

**B.     The Initial Showing for Injunctive Relief**

The Court first concludes that 3BTech made an initial showing for injunctive relief. Due to the removal of its products from Amazon, 3BTech will suffer a significant financial impact. *See* Decl. of Jianqing Zhu ¶ 14, DE 82-2. Further, if 3BTech is prohibited from selling products on Amazon, the entire business would likely fail. *See id.* ¶¶ 9, 15 (noting that 90% of 3BTech's sales occur on Amazon). Moreover, 3BTech has acquired significant goodwill and brand awareness that cannot be easily replicated. *See id.* ¶ 25. Thus, the Court concludes that 3BTech will suffer irreparable harm and has no adequate remedy at law. Further, the Court concludes that 3BTech has some likelihood of success on the merits. *See Girl Scouts of Manitou Council*, 549 F.3d at 1096 (noting that the likelihood of success standard "is an admittedly low requirement and is simply a threshold question."). Namely, based upon the unique facts of this case, it is possible that MercAsia acted with bad faith and tortiously interfered with 3BTech's contract with Amazon. Thus, the Court must proceed to the balancing phase of the analysis. *See id.*

**C.     The Equitable Considerations**

The Court finds that the equitable considerations weigh strongly against 3BTech. As such, 3BTech's request for injunctive relief is denied.

First, based upon the current record, the Court concludes that 3BTech has almost no chance of success on the merits. Amazon established an "Intellectual Property Policy for Sellers." *See* Ex. B, Intellectual Property Policy for Sellers, p. 2, DE 82-4. The policy provides in relevant part as follows: "If you receive a notice or warning for infringement and you believe the rights owner or Amazon made an error, you may appeal or dispute the claim." *Id.* For alleged

patent infringement, the policy provides as follows: "Reply to the notification you received, with specific reasons as to why you believe a mistake was made. You may also provide a court order demonstrating that your product is non-infringing or that the asserted patent is invalid or unenforceable." *Id.* at 3. Pursuant to this policy, Amazon will remove potentially infringing products and take remedial action against offending vendors. *See id.* at 3–5.

In May 2020, Amazon removed several of 3BTech's aerators due to possible patent infringement. *See* Ex. C, Amazon Takedown Notice, p. 2, DE 82-5; Ex. D, Amazon Takedown Notice, p. 2, DE 82-6. Amazon provided 3BTech with the following information: "If you believe there has been an error, please tell us why. Your explanation should include . . . [an] [e]xplanation of why you were warned in error. We will investigate to determine if an error occurred." Ex. D, Amazon Takedown Notice, p. 2, DE 82-6. On May 13, 2020, 3BTech sent a letter to Amazon, arguing that its products do not violate MercAsia's patent. *See* Ex. E, Letter to Amazon, p. 2, DE 82-7. On May 19, 2020, Amazon informed 3BTech that it had reviewed 3BTech's appeal, but that 3BTech failed to provide "proof of authenticity." Ex. F, Email from Amazon, p. 2, DE 82-8. Amazon requested further information which could substantiate 3BTech's argument. *See id.*

Based upon the record currently before the Court, 3BTech's claim for tortious interference has almost no chance of success on the merits. Namely, it appears that Amazon complied with its "Intellectual Property Policy for Sellers." *See* Ex. B, Intellectual Property Policy for Sellers, p. 2, DE 82-4. This policy allows for Amazon to remove products that possibly infringe a patent. *Id.* Further, it appears that Amazon complied with the terms of this policy and is currently investigating whether 3BTech's product violates MercAsia's patent. Notably, 3BTech fails to cite any specific contractual term or policy that Amazon violated. *See*

7

*United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("The parties—not the courts—must research and construct available legal arguments."). If Amazon did not violate a contractual term, then MercAsia cannot be liable for tortious interference with contract. *See Winkler*, 638 N.E.2d at 1235.

Moreover, Amazon also has a "Services Business Solutions Agreement." *See* Ex. A, Amazon Services Business Solutions Agreement, p. 1, DE 82-3. In relevant part, this policy provides as follows:

> Amazon has the right to determine the design, content, functionality, availability and appropriateness of its websites, selection, *and any product or listing in the Amazon Stores*, and all aspects of each Service, *including your use of the same*. Amazon may assign any of these rights or delegate any of its responsibilities.

*Id.* at 24 (emphasis added; stray comma omitted).

Based upon the broad language of this policy, MercAsia argues that Amazon has the ability to remove any product on its website. *See id.* 3BTech fails to respond to this argument in any meaningful way. *See* Def.'s Reply, p. 9, DE 92. Instead, 3BTech merely argues that this provision is "a small piece of [the] Amazon Services Business Solutions Agreement" and that MercAsia "is the sole cause for Amazon ceasing the sale of [the] Waerator W2." *Id.* at 8–9. This argument fails to consider that Amazon may have removed 3BTech's product for any number of reasons including, but not limited to, the possibility that the Waerator W2 violated MercAsia's patent. 3BTech fails to explain how such an action would be a breach of contract under Indiana law. *See Collins*, 796 F.3d at 836. Moreover, based upon the broad language of the Services Business Solutions Agreement, it appears that Amazon had the right to remove any product from its website. Critically, 3BTech fails to cite any contractual term or policy that Amazon violated. *See id.* If Amazon did not breach its contract with 3BTech, then MercAsia cannot be liable for tortious interference. *See Winkler*, 638 N.E.2d at 1235. Thus, based upon the current record,

3BTech's allegations of tortious interference have almost no chance of success on the merits. Accordingly, the Court specifically finds that injunctive relief is not warranted due to 3BTech's low probability of success.

Second, the balance of harms does not weigh in favor of 3BTech. *See Courthouse News Serv.*, 908 F.3d at 1068 ("This assessment is made on a sliding scale: 'The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'") (quoting *Girl Scouts of Manitou Council*, 549 F.3d at 1086). Namely, it appears that 3BTech's internal appeal to Amazon remains pending. *See* Ex. F, Email from Amazon, p. 2, DE 82-8 (Amazon requested further information to determine whether 3BTech's product violated MercAsia's patent); *see also* Ex. 2, Blake Brittain, *Amazon's Judging of IP Claims Questioned in Seller Lawsuits (2)*, p. 6, DE 82-9 (noting that Amazon has an internal arbitration process to determine whether a product violates a patent).[3] If 3BTech can successfully appeal Amazon's initial decision, then its need for an injunction will be moot.[4] In contrast, MercAsia will be significantly impacted by an injunction. Finally, although the majority of sales derive from Amazon, 3BTech is still able to sell its products on its own website and other commercial websites.

Finally, the Court finds that an injunction would not be in the public interest due to its effect on Amazon and consumers. *See Courthouse News Serv.*, 908 F.3d at 1068 ("Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties."). Namely, granting 3BTech's injunction would curtail

---

[3] Blake Brittain, *Amazon's Judging of IP Claims Questioned in Seller Lawsuits (2)*, BLOOMBERG LAW (Feb. 12, 2020), https://www.bloomberglaw.com/document/X330DUCS000000?bna_news_filter=ip-law&jcsearch=BNA%25200000016ff7eedf8ea77ffffebd860001#jcite.

[4] Irrespective of the internal appeal, the Court finds that injunctive relief is not warranted because 3BTech's allegations of tortious interference have almost no chance of success. *See Courthouse News Serv.*, 908 F.3d at 1068.

Amazon's legitimate interest in receiving complaints about products sold on its website. Amazon has a considerable interest in ensuring that products sold on its website meet its internal standards. The public would also be negatively impacted if the Court prevented Amazon from responding to complaints about products sold on its website. Therefore, 3BTech fails to demonstrate that it is entitled to injunctive relief.

### D.      The Alternative Arguments and Request for Sanctions

The Court notes that MercAsia has raised several procedural arguments. *See* Pl.'s Response, pp. 6–10, DE 88. Namely, MercAsia argues that the request for injunctive relief is improper because the current allegations are not included within 3BTech's counterclaims. *See id.* However, if the Court grants 3BTech's pending request to amend, then these procedural arguments will be moot. *See* Mot. to Amend Counterclaim, pp. 1–3, DE 90. Moreover, the current dispute over the Waerator W2 arose in May 2020, so it is understandable that these new allegations were not included in 3BTech's original counterclaims. Regardless, because the Court has rejected the request for injunctive relief on the merits, it need not further address MercAsia's procedural arguments. Finally, MercAsia's request for sanctions is premised upon the procedural deficiencies mentioned above. *See* Pl.'s Response, pp. 22–23, DE 88. Due to 3BTech's pending request to amend its counterclaims, the Court declines to award sanctions.

## III.  CONCLUSION

For the reasons stated above, 3BTech's Motion for a Temporary Restraining Order and Preliminary Injunction [DE 82] is DENIED.

SO ORDERED.

ENTERED:  June 30, 2020

                                              /s/ JON E. DEGUILIO
Chief Judge
United States District Court