UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MERCASIA USA, LTD, </br>    Plaintiff, | ) </br> ) </br> ) |
| v. | )    CASE NO. 3:17-CV-718-JD-MGG </br> ) |
| JIANQING ZHU, *et al.*, </br>    Defendants. | ) </br> ) </br> ) |

**OPINION AND ORDER**

Ripe before the Court in this action are two motions to compel discovery filed by Plaintiff MercAsia USA, LTD ("MercAsia"). [DE 66, DE 106]. The undersigned issues the following opinion and order resolving both of Plaintiff's motions to compel.

**I.**    **RELEVANT BACKGROUND**

   **A.**    **Factual Background**

Plaintiff MercAsia is the owner of U.S. Patent No. 7,882,986, titled "liquid dispenser." The patented device attaches to the top of a wine bottle and can, with a push of a button, aerate and dispense wine into a glass.[1] MercAsia markets its version of the device under the name Aervana. In this action, MercAsia asserts that a competing device, which performs a similar function and is marketed under the name Waerator, infringes on its patent. MercAsia sued 3BTech, Inc ("3BTech"), which sells the Waerator.

---

[1] The device contains a pump that, when activated by pushing a button on top of the device, pumps air into the bottle. The air pressure then forces the wine up a straw and out of a spout that extends to the side of the device. Releasing the button turns off the pump and allows the pressure inside the bottle to be released, which ceases the dispensing of the wine.

The patent includes one independent claim, Claim 1, and a number of dependent claims. Only Claim 1 is at issue in this action.

MercAsia sells the product described by its patent under the name Aervana in the United States and under the name Vinaera abroad. The device is typically offered for retail sale at a price of $100 and is marketed as "the world's first electronic wine & spirits aerator." MercAsia asserts that 3BTech is marketing the Waerator to directly compete against the Aervana. The Waerator is typically sold at a retail price of $60.

### B.     Procedural Posture

The parties are currently engaged in discovery. The deadline for the parties to review documents that have been produced passed on November 23, 2020. The remaining discovery deadlines in this action are that (1) all depositions shall be completed no later than February 26, 2021, and (2) all discovery, including fact and expert discovery, shall be completed no later than April 23, 2021. [DE 132].

MercAsia began its efforts to collect relevant documents and financial information in December 2019 by serving its first set of Requests for Production (Numbers 1 to 13) upon 3BTech. Claiming that 3BTech produced "next to nothing," MercAsia filed its first Motion to Compel on March 6, 2020. [DE 66]. In the following months, MercAsia served 3BTech with additional second, third, and fourth sets of discovery requests. On June 24, 2020, MercAsia filed its Second Motion to Compel, requesting that the Court enter an order compelling 3BTech to fully respond to each of MercAsia's subsequent sets of discovery requests.

On January 27, 2021, after conferring to resolve several outstanding motions, including MercAsia's two motions to compel, the parties submitted to the Court a Status Report. [DE 143]. The Status Report indicated that the parties had resolved two other discovery-related motions that have since been denied as moot. [DE 145]. The Status Report, however, confirmed that over a year after its first discovery requests were served, MercAsia still maintains that "the actions taken by [3BTech] to honor its discovery obligations imposed by Plaintiff's . . . Requests for Production . . . remain indefensibly insufficient." [DE 143 at 1–2]. On February 1, 2021, the undersigned conducted a telephonic motion hearing addressing MercAsia's two remaining motions to compel [DE 66, DE 106] and MercAsia's Motion for Sanctions in the Form of Entry of Default Judgment [DE 98], which was referred to the undersigned [DE 102] and will be resolved by a separate Report and Recommendation.

As to MercAsia's motions to compel, the parties report progress since the motions were briefed such that not all of their original arguments remain relevant. Accordingly, this Order is tailored to address the parties' outstanding discovery disputes, as confirmed in their Status Report and at the telephonic motion hearing.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Information is relevant for purposes of Rule 26 'if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Richmond v. UPS Service*

3

*Parts Logistics*, No. IP01-1412-C-K/H, 2002 WL 745588, at *1 (S.D. Ind. Apr. 25, 2002) (citing Fed. R. Civ. P. 26(b)(1)). "For discovery purposes, relevancy is construed broadly to encompass 'any matter that bears on, or that could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Yessenow v. Hudson*, 270 F.R.D. 422, 426 (N.D. Ind. 2010) (quoting *Chavez v. DaimlerChrysler Corp.*, 2016 F.R.D. 615, 619 (S.D. Ind. 2002)). "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard." *Id.* at 426–27 (citing *Borom v. Town of Merrillville*, No. 2:07 CV 98, 2009 WL 1617085, at *1 (N.D. Ind. June 8, 2009)). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Adams v. Target*, No. IP00-1159-C-T/G, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001); *see also Shapo v. Engle*, No. 98 C 7909, 2001 WL 629303, at *2 (N.D. Ill May 25, 2001) ("Discovery is a search for the truth.").

When an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses, a party may seek an order to compel discovery. Fed. R. Civ. P. 37(a)(2)–(3). The burden "rests on the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 IBEW*, Cause No. 1:08-CV-160, 2009 WL 1325103, at *8 (N.D. Ind. May 13, 2009) (citing *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)). In the court's determination, it considers "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in

furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007).

### B. Discussion

MercAsia claims that 3BTech's failure to collect and produce documents from "readily available sources" such as its own accounting team, as well as "its continued refusal to provide easily retrievable financial information from its accounting software," justifies a court order mandating that 3BTech comply with its discovery obligations, as well as an award of fees and costs associated with such motions. The Court agrees.

#### 1. NetSuite Sales Reports

In addition to the documents and invoices already provided to MercAsia, 3BTech can create reports, generated from its NetSuite accounting system, that aggregate annual total sales, gross and net, of its products. Despite 3BTech's argument that its invoices are the best evidence of its sales, its NetSuite reports will allow MercAsia to reconcile 3BTech's varying sales reports to date. For instance, 3BTech first represented gross sales in the amount of $1,172,284 based on invoices. That sales amount, however, directly conflicted with later discovery obtained from third-party vendors, such as Amazon, Walmart, and HSN, whose documents represented a higher sales figure of $1,411,352. [DE 143 at 4]. More recently, 3BTech supplemented its production with additional invoices that support an even higher gross sales figure of $1,488,522. Furthermore, 3BTech indicated at the hearing that generating these reports, which is not done in the normal course of its business, will take 1-2 days at the most. Accordingly, the probative value of the reports in clarifying 3BTech's profits from the Accused

Product far outweighs any burden imposed on 3BTech to produce them. Thus, 3BTech's NetSuite sales reports are relevant to the claims and defenses in this case, are proportional to the needs of this case, and must be produced. *See* Fed. R. Civ. P. 26(b)(1).

Specifically, 3BTech must produce complete responses to all of MercAsia's document requests ("RFPs"), including RFP No. 7, requesting any and all financial reports necessary to support 3BTech's gross and net revenues. These reports must document 3BTech's gross sales, sales returns, net sales, cost of goods sold purchased, marketplace charges, advertising expenses, and gross profits related to the Accused Product for years 2017, 2018, 2019, 2020, and 2021. 3BTech is also ordered to provide documentation supporting expenses incurred as of March 2020.

### 2.   Zhu and ZakeIP Subpoenas

In an effort to obtain the relevant financial information withheld by 3BTech, MercAsia issued subpoenas to Jianqing "Johnny" Zhu and ZakeIP, non-parties to this action. In its second motion to compel, MercAsia moves the Court for an order compelling Mr. Zhu and ZakeIP to produce documents in response to these subpoenas.

Rule 45 of the Federal Rules of Civil Procedure states that a party may serve a subpoena to a non-party to produce designated documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted as under the discovery rules." *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 253 (S.D. Ind. 2002). While nonparty discovery is broad, it is not unlimited. The Court may quash a subpoena that "(i) fails to allow a reasonable time to comply; (ii)

requires a person to comply beyond the geographical limits specified in 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Here, 3BTech contends that the Zhu and ZakeIP subpoenas pose an undue burden. "To determine whether a subpoena is unduly burdensome, a court weighs a number of factors including relevance, need, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, the burden imposed, and non-party status." *Alderson v. Ferrellgas*, CAUSE NO. 3:12-cv-305-TLS-CAN, 2013 WL 11325054, at *4 (N.D. Ind. Aug 22, 2013) (citing *WM High Yield v. O'Hanlon*, No. IP-05-115-Misc., 2006 WL 3197152, at *4 (S.D. Ind. 2006)). The Court need not reach any conclusion as to whether the Zhu and ZakeIP subpoenas were unduly burdensome because 3BTech, based on this Order, will be producing the same financial information sought from Zhu and ZakeIP. Thus, Zhu and ZakeIP—as nonparties—need not be burdened with producing duplicative information in response to MercAsia's subpoenas, which should be reasonably attainable from 3BTech. As such, the Zhu and ZakeIP subpoenas are hereby **QUASHED**.

### 3. Electronically Stored Information ("ESI")

MercAsia further contends that 3BTech has not produced all the electronically stored information ("ESI") responsive to its RFPs. Commendably, the parties agreed upon relevant search terms in September and October 2020. 3BTech performed searches of its email and enterprise servers using the terms agreed to by MercAsia. That search initially identified approximately 1.9 million pages in 400,000 documents that 3BTech

then worked to reduce to approximately 676,000 pages in 47,000 documents that were produced to MercAsia. However, MercAsia contends that only about 3% of those pages are responsive to its RFPs.

3BTech argues that further ESI efforts would be disproportional to the needs of this case. According to 3BTech, only $1.5 million in sales are at issue in this reasonable royalty case such that damages in this case rise to only about $150,000. 3BTech explains that it has already spent $50,000 on ESI vendors plus the attorney fees involved in facilitating and reviewing the ESI production. Yet MercAsia remains justifiably concerned that 3BTech has withheld responsive information leaving it with an incomplete picture as to the facts of this case.

Despite the obvious costs involved in ESI discovery, 3BTech has not demonstrated that MercAsia's concerns related to 3BTech's responses to its RFPs are unfounded. The record reflects a tortuous discovery process caused at least in part by 3BTech's narrow view of what information is relevant and responsive to MercAsia's requests. Therefore, some additional effort to search for responsive ESI is warranted.

Accordingly, the parties shall meet and confer once more to narrow search terms. 3BTech shall then search all of its servers using the narrowed search terms. Given its familiarity with its own servers, 3BTech must be forthcoming with the terms that would best return relevant and discoverable information to ensure a complete search and to obviate the need for future court-ordered searches.

### 4. Rule 37 Fees and Expenses

When a motion to compel is resolved, the court is left to determine whether either party's reasonable expenses incurred in making the motion, including attorney's fees, should be awarded. Fed. R. Civ. P. 37(a)(5)(A)-(B) ("If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). MercAsia explicitly requests such an award in both of its motions to compel.

Rule 37 functions as a fee-shifting rule, and courts "shall require sanctions based upon the costs of seeking a motion to compel." *Yessenow*, 270 F.R.D. at 429 (citing *Stookey v. Teller Training Distrib., Inc.*, 9 F.3d 631, 637 (7th Cir. 1993)). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994). "Sanctions under Rule 37(a)(4)(A) are appropriate unless the party's nondisclosure was 'substantially justified.'" *Yessenow*, 270 F.R.D. at 429; *see also* Fed. R. Civ. P. 37(a)(5)(A) ("[T]he court must not order this payment if . . . the opposing party's nondisclosure . . . was substantially justified; or other circumstances make an award of expenses unjust.").

After giving 3BTech an opportunity to be heard, both by way of briefing and during the telephonic motion hearing held on February 1, 2021, the Court concludes that fee shifting is appropriate here. 3BTech's reasoning for failing to meet its discovery

obligations is based on its own interpretation of Rule 26(b)'s proportionality requirement. During discovery, 3BTech produced a "complete" set of invoices related to the Accused Product. Only after being directly contradicted by third-party reports obtained by Amazon, Wal-Mart, and HSN, did 3BTech conclude that the invoices previously produced were materially incomplete and needed to be supplemented with additional invoices. Here, using a report from its NetSuite accounting system, 3BTech had the opportunity to corroborate these sales figures with a report that would take only one-to-two days to create. Yet, 3BTech failed to do so.

The record in this case is replete with instances where 3BTech unilaterally interpreted the RFPs it received from MercAsia, and, after deeming the information requested to be undiscoverable, chose not to respond. MercAsia served 3BTech with its first set of RFPs in December 2019. Over a year later, MercAsia still seeks the information it requested. This conduct caused MercAsia to incur unnecessary expenses by way of filing and briefing motions in an effort to obtain this information. Therefore, neither 3BTech's briefing of MercAsia's request for Rule 37 fees in its motions nor its argument before this Court on February 1, 2021, demonstrates that its delayed and incomplete discovery responses were substantially justified. Moreover, 3BTech has not suggested that extenuating circumstances exist that would make a Rule 37 award of expenses unjust as to these motions to compel.

Without substantial justification for its deficient discovery responses or evidence of extenuating circumstances, the Court is persuaded that an award of expenses is warranted under Fed. R. Civ. P. 37(a)(5)(A) for MercAsia's first and second motion to

10

compel. Accordingly, the Court **AWARDS** MercAsia its reasonable expenses, including attorney's fees, incurred in bringing its motions to compel dated March 6, 2020 [DE 66], and June 24, 2020 [DE 106].

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** MercAsia's Motion to Compel Documents and Responses to Requests for Production [DE 66] as to the issues not already resolved by the parties. Similarly, the Court **GRANTS IN PART** and **DENIES IN PART** MercAsia's Second Motion to Compel Documents and Responses to Requests for Production [DE 106] as specified below. Consistent with the terms of this Opinion and Order,

- the Zhu and ZakeIP subpoenas are **QUASHED**;

- 3BTech is **ORDERED** to produce the relevant NetSuite reports as described above on or before **March 15, 2021**;

- the parties are **ORDERED** to meet and confer to generate additional search terms no later than **March 15, 2021**;

- 3BTech is **ORDERED** to search its servers using the parties' new search terms and produce complete, relevant responses to MercAsia's RFPs no later than **April 16, 2021**; and

- MercAsia is **ORDERED** to file a statement of expenses, including attorney fees, related to its motions to compel [DE 66, DE 106] by **March 15, 2021**. 3BTech may file any objection to the reasonableness of MercAsia's statement of expenses on or before **March 29, 2021**.

**SO, ORDERED** this 1st day of March 2021.

                                               s/Michael G. Gotsch, Sr.
                                               Michael G. Gotsch, Sr.
                                               United States Magistrate Judge