UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MERCASIA USA LTD,

     Plaintiff,

     v.                           Case No. 3:17-CV-718 JD

3BTECH, INC.,

     Defendant.

**OPINION AND ORDER**

Plaintiff MercAsia USA has moved the Court for leave to amend and supplement its first amended complaint to add former defendant Jianqing "Johnny" Zhu back into the proceedings as a co-defendant with current Defendant 3BTech, Inc. (DE 174.) The Court previously dismissed Mr. Zhu from the case after it found that MercAsia's amended complaint did not contain sufficient allegations to pierce 3BTech's corporate veil and proceed against Mr. Zhu as an individual. (DE 46.) MercAsia claims that it has now compiled enough information through discovery to warrant placing Mr. Zhu back into the lawsuit in his individual capacity. MercAsia has additionally moved to seal its filings related to its motion to amend and supplement. For the following reasons, the Court denies MercAsia's motion to seal and grants MercAsia's request for leave to file its supplemental complaint.

**I. Factual Background**

This lawsuit at its core is based on MercAsia's allegations that 3BTech is fraudulently infringing on a patent licensed to MercAsia. But in the approximately three and a half years this case has been pending, most of the parties' time and effort has been put not into the merits of the claims but instead into a long and contentious discovery process. While there are still several

motions pending tied to discovery disputes, MercAsia's motion to file its supplemental complaint indicates the parties may now be ready to finally advance this case to a consideration of the merits of the underlying claims and bring the lawsuit closer to a resolution.

Plaintiff MercAsia is an Illinois corporation that markets a "one-touch, luxury wine aerator" product that makes use of patented technology licensed to MercAsia. (DE 27 at 1, 3.) Defendant 3BTech is an Indiana corporation that has allegedly marketed its own wine aerator, called the Waerator, that uses the same patented technology licensed to MercAsia and has attempted to steer consumers away from MercAsia's product in favor of its own. 3BTech allegedly uses a number of other corporate identities to sell and service the Waerator product, including corporate entities named Better Choice Online and Warranty Pro. An additional corporate entity, Zake IP Holdings, LLC, allegedly holds the trademark for the Waerator. Each of these entities is allegedly connected to 3BTech and is allegedly controlled to some extent by Mr. Zhu, who is 3BTech's president. Mr. Zhu has also allegedly been involved in creating and operating several other corporate entities in Indiana, some of which MercAsia believes have also played a role in fraudulently infringing on its aerator technology patent. (*Id.* at 2.)

When MercAsia originally brought this lawsuit, it named both 3BTech and Mr. Zhu as defendants. But Mr. Zhu quickly moved to dismiss the claims against him because he argued that MercAsia had failed to allege facts that would justify piercing 3BTech's corporate veil and holding him individually liable for the patent infringement and misrepresentations. The Court agreed with Mr. Zhu and dismissed the claims against him in a 2017 order. (DE 46.) The case then proceeded with 3BTech as the sole defendant.

As already mentioned, progress in this case has been slow since that time. Both MercAsia and 3BTech have traded numerous filings during discovery alleging bad faith litigation tactics,

misrepresentations, and failures to comply with discovery requirements. MercAsia filed two different motions to compel discovery (DE 66; DE 106) because it alleged 3BTech was not providing timely or sufficient responses. (DE 66; DE 106.) MercAsia also resorted to third-party discovery involving, among others, Mr. Zhu and Zake Holdings. (DE 175 at 3–4.) The Court has granted MercAsia's first motion to compel in full and MercAsia's second motion to compel in part. (DE 146.) While the discovery process has been arduous, MercAsia alleges the process allowed it to compile previously unavailable information about 3BTech, Mr. Zhu, and the other related corporate entities that justifies a supplemental complaint placing Mr. Zhu back into the case as a defendant based on a veil piercing theory. Part of that information is MercAsia's discovery on July 27, 2021, that Mr. Zhu was allegedly actively lying, through 3BTech's counsel, about not having been served during the discovery process in an effort to undermine MercAsia's ability to obtain full discovery. (DE 174-1 ¶ 9; DE 175-3; DE 175-4.) It was after MercAsia received that July 27 correspondence from Mr. Zhu that MercAsia decided it had gleaned enough information to seek to supplement its complaint and bring Mr. Zhu back into the case in his individual capacity.

MercAsia filed its motion for leave to amend and supplement its complaint on August 27, 2021. It contemporaneously moved to seal the motion and the documents that accompanied and supported it. (DE 173; DE 174.) The filing came approximately thirteen months after the prior July 30, 2020, deadline the Court had set in its scheduling order for MercAsia to make any amendments to its complaint. (DE 59 at 3.) The filing also came while fact discovery was still ongoing, as the Court had extended the deadline for fact discovery to October 18, 2021. (DE 183.)

**II. Discussion**

3

The two motions this order covers, while related, require different analyses and the application of different standards. The Court thus foregoes a separate standard of review section in favor of a specific discussion of the applicable standards for each motion at the time the motion is discussed below. The Court first addresses MercAsia's motion to seal and then moves to address MercAsia's motion to file a supplemental complaint.

### A. Motion to Seal

MercAsia filed its motion to seal seeking permission to seal six documents: (1) MercAsia's Motion to Amend and Supplement the First Amended Complaint; (2) MercAsia's Proposed First Supplemental Complaint; (3) MercAsia's Brief in Support of Its Motion to Amend and Supplement; (4) the Declaration of Brian F. McMahon in support of the motion; and (5) all exhibits attached to the McMahon Declaration. (DE 173 at 1.) MercAsia explained that counsel had not yet conferred about the need to seal the documents at the time MercAsia moved to seal but that MercAsia filed anyway out of "an abundance of caution and as a courtesy" to 3BTech and its principals. (*Id.*) MercAsia only provided broad reasons for why a seal might be necessary, stating that some of the information contained in the filings was produced during the discovery process "under an expectation of confidentiality" and that some of the allegations included in the filings "if made public, could injure the reputation of 3BTech and/or its principals." (*Id.* at 1–2.)

3BTech never responded to the motion. It later made clear that it viewed its lack of a response as its indication that it agreed with MercAsia's motion. (DE 180.) But MercAsia viewed 3BTech's non-response as a failure by 3BTech "to take any steps to preserve the confidential nature of any information" contained in the documents. (DE 179 at 2). Thus, before 3BTech had clarified what it had intended with its lack of response, MercAsia filed a "reply" to

its own motion in which it sought to withdraw the motion because of 3BTech's failure to take action. (*Id.*) MercAsia cited no authority in its reply to justify it treating 3BTech's lack of a response as a failure to protect confidential information. (DE 179.) And 3BTech subsequently argued that because its lack of response was meant to indicate agreement, it would be unfair to interpret its failure to respond as a failure to protect confidential information. (DE 180 at 2.) The Court notes the parties' debate about how 3BTech's lack of a response should be construed, but the Court need not resolve that debate or determine whether MercAsia properly moved to withdraw its motion because the Court would deny MercAsia's motion anyway.

A party seeking to seal documents has the burden of specifically demonstrating to a court why an order to seal is appropriate. When information is filed with a court, it may "influence or underpin the judicial decision" and thus should be "open to public inspection unless" the information "meets the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). A motion to seal thus has "no prospect of success" unless it analyzes "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 548. It is also not enough if litigants simply argue that the contents of filings are private or should be kept confidential. *See Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case . . . be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing."); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945–46 (7th Cir. 1999) (warning courts not to allow parties "to seal whatever they want" and urging "a neutral balancing of the relevant interests" connected to any good-cause determination presented by a motion to seal).

MercAsia never pointed to any caselaw that supported sealing the specific documents and never specifically explained why the contents of any of the documents warranted a seal. (DE 173; DE 179; DE 180.) That shortcoming prevents the Court from granting MercAsia's motion at the outset. *See Baxter*, 297 F.3d at 545. But that result is also clear from even a cursory review of most of the documents themselves. The first three documents MercAsia asked the Court to seal, MercAsia's motion to supplement its complaint, the proposed supplemental complaint itself, and MercAsia's brief in support of its motion, are all either pleadings or briefing that should be available to the public. Each document is simply an argumentative filing before the Court and, while each may reference issues that 3BTech might wish were not being alleged, contain arguments and allegations that are integral to the judicial resolution of the issues in this case. *See Union Oil*, 220 F.3d at 567–68; *see also Baxter*, 297 F.3d at 545–46. Similarly, the Court finds nothing in Mr. McMahon's declaration attached to MercAsia's brief in support of its motion that discloses information or references issues that may be subject to seal based on *Baxter* standards. (DE 173; DE 180); 297 F.3d at 545–46; *see also In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).

It is also unclear to the Court why the remaining documents, the exhibits attached to Mr. McMahon's declaration, would need to be filed under seal. They are simply examples of discovery attempts also discussed in the parties' briefing. Without any specific articulated basis to seal the documents, the Court denies MercAsia's motion with regard to these documents as well. *See Baxter*, 297 F.3d at 545–46. However, the Court notes that the documents making up the attachments do appear to have come from the discovery process between the parties, a process MercAsia broadly argued the parties participated in with an understanding of confidentiality. (DE 173 at 1; DE 175-2; DE 175-3). Thus, the Court, out of an abundance of

caution, will leave the documents filed as attachments to Mr. McMahon's declaration sealed for the time being. If either party believes the documents should remain sealed, that party must file a new motion to seal the documents within fourteen days of the date of this order. The new motion must explain with required specificity why the documents qualify for under-seal filing given the Seventh Circuit's standards. *See Malibu Media, LLC v. Harrison*, 2014 WL 127604, at *3 (S.D. Ind. Dec. 31, 2014). If no motion is filed after fourteen days, the Court will unseal the documents.

### B. Leave to Supplement and Amend Complaint

Having dealt with the motion to seal, the Court moves to considering MercAsia's motion for leave to file its proposed supplemental complaint. Because MercAsia made its request at the end of August 2021, approximately thirteen months after the July 30, 2020, deadline by which it was allowed to amend its pleadings under the Court's scheduling order, MercAsia must independently demonstrate why its complaint and the Court's prior scheduling order should be amended at this later date. Under Federal Rule of Civil Procedure 15(d), a "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Saratoga Potato Chips Co. v. Classic Foods, Inc.*, 2014 WL 2930495, at *2 (N.D. Ind. June 27, 2014). Leave to supplement the pleadings should be granted "when there is no apparent reason for denying leave such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed," or "undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003)). Further a party must show it has "good cause" to amend a court's prior scheduling order. Fed. R. Civ. P. 16(b)(4); *Pringle v. Garcia*,

2013 WL 1911483, at *2 (N.D. Ind. May 8, 2013). A district court has "substantial discretion" to either permit or deny a motion to file a supplemental pleading. *Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011).

MercAsia argued that it has met those requirements to justify filing its supplemental complaint, but 3BTech opposed MercAsia's motion for three reasons. First, 3BTech argued that MercAsia could not demonstrate "good cause" because MercAsia had not been diligent in bringing its new motion. (DE 178 at 2.) Second, 3BTech argued that MercAsia's supplemental complaint would be futile because it still fails to properly allege that Mr. Zhu could be individually liable under a veil piercing theory. (*Id.* at 5–9.) And third, 3BTech argued that allowing MercAsia's proposed supplemental complaint would result in undue prejudice to both itself and Mr. Zhu. (*Id.* at 9–10.)

### 1. Good Cause

The Court takes each argument in turn, starting with whether MercAsia has shown good cause. The good cause standard that guides a court's decision "primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). Moving parties must "show that despite their diligence the time table could not have reasonably been met." *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

MercAsia pointed to five pieces of evidence it uncovered through discovery after the prior scheduling order's July 2020 deadline to amend as well as "Mr. Zhu's continued apparent reticence to honor his discovery obligations" despite MercAsia's extensive efforts as the basis for finding that it has proceeded diligently. (DE 175 at 5–6.) The five pieces of evidence MercAsia discovered after the prior July 2020 scheduling order deadline include a 3BTech offer

of settlement from April 2021 that represented 3BTech was expecting to file for bankruptcy protection, MercAsia's commercial purchase of a Waerator product in April 2021 following notification of the settlement offer describing the likelihood of bankruptcy, discovery materials revealing an additional corporation MercAsia believes is involved in the infringing activity that forms the basis of this case, 3BTech financial documents from 3BTech's outside accountant, and "[f]acially inconsistent 3BTech Annual Meeting Minutes." (*Id.*) These documents, along with Mr. Zhu's ongoing individual involvement in the litigation by at times fraudulently directing 3BTech's discovery and other decisions could not have been known before the prior July 2020 amendment deadline and only came to light because of MercAsia's "persistence in discovery," MercAsia argued. (DE 175 at 7–9.)

3BTech countered by arguing that MercAsia's discoveries were not actually new and did not showcase diligence. 3BTech's argument rested on the fact that all of the materials MercAsia obtained through discovery and cited as the basis for its reinvigorated veil piercing theory were known to MercAsia by the end of April 2021 at the latest. Despite that, 3BTech argued, MercAsia waited until the end of August 2021 to file its motion to amend and supplement. (DE 178 at 2–4.) 3BTech provided several cases supporting the proposition that a party that waits too long to file after having all of the information necessary to file cannot be found to have exercised the required diligence to meet the good cause standard. (DE 178 at 3–4) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011) (holding that a party that waits "more than two months to file . . . after he had all the information he needed to file the motion" could not show good cause); *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)). But importantly, 3BTech did not challenge any of MercAsia's arguments that 3BTech improperly made the discovery process in

this lawsuit drag on or that Mr. Zhu played a role in 3BTech's lack of compliance with MercAsia's attempts to obtain full discovery. (DE 178 at 2–4.)

The Court's consideration of the facts and arguments from both parties suggests that MercAsia was properly diligent. 3BTech is right that MercAsia had the last of the documents on which it relied in moving to file a supplemental complaint by April 2021, four months before it actually filed, but those documents were not all that MercAsia claims to have relied on. MercAsia also clearly stated it relied on 3BTech's alleged continued obstructive conduct in the discovery process and Mr. Zhu's individual role in that conduct that became clear on July 27, 2021, when Mr. Zhu allegedly falsely claimed that MercAsia had never served him with a discovery request. (DE 175-2; DE 175-3; DE 175-4; DE 181 at 3–5.) It was only at that time, according to MercAsia, that it conclusively determined Mr. Zhu was engaging in activity that justified veil piercing and realized that any further efforts to build evidence for a supplemental complaint would be "conclusively futile." (DE 181 at 1–3.) 3BTech does not dispute that Mr. Zhu waited until the end of July 2021 to make that disclosure and it did not present any argument to rebut that the time it took MercAsia to move to file its supplemental complaint is most accurately measured from July 27, 2021, given MercAsia's clear reliance on Mr. Zhu's response from that date instead of April 2021.

The approximately one month MercAsia took from the time of Mr. Zhu's response to the filing of its motion does not constitute undue delay and does not show a lack of diligence or bad faith, particularly because fact discovery was still ongoing. One month is far shorter than any of the timelines in the cases 3BTech cited in opposition to a finding of good cause. And the fact that the filing came before the end of fact discovery makes this case further distinguishable from any case that 3BTech cited in opposition. *See Alioto*, 651 F.3d 715; *Edmonson v. Desmond*, 551 F.

App'x 280 (7th Cir. 2014); *Johnson*, 975 F.2d 604; *Eastern Minerals*, 225 F.3d 330. Additionally, the Court notes that there is ample evidence of MercAsia's substantial diligence in the lengthy discovery process this lawsuit has seen given evidence of MercAsia having served numerous third-party discovery requests and having filed two motions to compel on 3BTech to ensure it was able to continue to collect relevant information that 3BTech was, at best, reluctant to provide. (DE 146; DE 181 at 3.) Based on that collective evidence, the Court finds that MercAsia had good cause to file its supplemental complaint at the time that it did.

### 2. Futility

Having found MercAsia has shown good cause to file, the Court next moves to determine whether 3BTech is correct that allowing MercAsia to amend would be futile. 3BTech argued that MercAsia's supplemental motion is futile because MercAsia's new allegations are still insufficient to justify piercing the corporate veil and thus would lead to MercAsia's claims against Mr. Zhu individually being dismissed if Mr. Zhu were to file a new motion to dismiss. (DE 178 at 6, 11.) Therefore, the Court looks to the new allegations in MercAsia's proposed supplemental complaint to determine whether they are sufficient to potentially justify veil piercing and could survive a motion to dismiss.

In determining whether to pierce the corporate veil, courts typically apply the law of the state of incorporation. *Secon Serv. Sys. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 413 (7th Cir. 1988); *Chapel Ridge Invs., LLC v. Petland Leaseholding Co.*, 2013 WL 6331095, at *2 (N.D. Ind. Dec. 4, 2013). 3BTech is incorporated in Indiana, so the Court looks to Indiana's standard for piercing the corporate veil. In Indiana, "the burden on a party seeking to pierce the corporate veil is severe." *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004). Indiana permits the corporate veil to be pierced "only where (1) the corporate form is so

ignored, controlled, or manipulated that it is merely the instrumentality of another, and (2) the misuse of the corporate form constitutes a fraud or promotes injustice." *Id.* at 934–35. Indiana courts have identified a number of "guideposts" that can be considered in determining whether those elements are met, including:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co.*, 722 F. Supp. 2d 1015, 1031–32 (N.D. Ind. 2010) (quoting *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 564–65 (Ind. Ct. App. 2002). While the guideposts are not mandatory and need not all be satisfied to justify veil piercing, they are helpful in reaching a decision. *See Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 506 (Ind. Ct. App. 2007). Whether the party seeking to disregard corporate existence has met its burden "is a highly fact-sensitive question." *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282 (Ind. Ct. App. 2012).

A review of MercAsia's proposed supplemental complaint in light of those standards suggests to the Court that the supplemental complaint would not be futile. When faced with MercAsia's initial pleadings attempting to hold Mr. Zhu individually liable for 3BTech's fraudulent and infringing conduct, the Court dismissed MercAsia's claims because MercAsia had not alleged facts to establish many of the guideposts and did not allege that the fraudulent or unjust conduct at issue in the lawsuit was tied to misuse of the corporate form. (DE 46 at 6–7.) MercAsia has changed that in its supplemental complaint. (DE 174-1 ¶ 34.)

First, MercAsia clearly alleges that Mr. Zhu is controlling and manipulating 3BTech's corporate form, as well as the corporate forms of other entities with which he is involved, to

promote the fraud that gave rise to this lawsuit. The underlying fraud in this lawsuit is the promotion of the Waerator product as a patented wine aerator in a way that infringes the patent MercAsia holds for its own aerator product. (DE 174-1 ¶¶ 9–18.) MercAsia has specifically alleged that Mr. Zhu is using 3BTech and other corporate entities he controls to pursue his own interest in marketing the Waerator product and is manipulating the entities' corporate forms "in order to continue illicit sales of the Accused product, to minimize if not altogether avoid any money judgment in this matter, and to otherwise improperly and prohibitively interfere with MercAsia's ongoing attempts to pursue its patent rights in this matter." (DE 174-1 ¶ 34(a)(ii).) In short, MercAsia is alleging that Mr. Zhu is using 3BTech as his corporate shield as he infringes on MercAsia's patent and has created and manipulated other corporate entities to ensure he can escape individual liability, avoid paying any potential legal judgment, and continue infringing even if 3BTech itself is barred from continuing to infringe. (*Id.*) The Court thus finds MercAsia has alleged a causal connection between Mr. Zhu's misuse of the corporate form and the promotion of fraud and injustice in this case. *See Escobedo*, 818 N.E.2d at 933; *Gates*, 962 N.E.2d at 1282–83.

MercAsia has also alleged specific facts that support its veil piercing theory and fit into the various categories Indiana courts have identified as guideposts for determining whether veil piercing is warranted. *See Escobedo*, 818 N.E.2d at 933.

### a. Undercapitalization

MercAsia alleges that Mr. Zhu has worked to deliberately undercapitalize 3BTech. (DE 174-1 ¶ 34(b).) "Capitalization is inadequate, as would support piercing the corporate veil, when it is very small in relation to the nature of the entity's business and the risks attendant to such business." *Blackwell v. Superior Safe Rooms LLC*, 174 N.E.3d 1082, 1096 (Ind. Ct. App. 2021),

*transfer denied*, 176 N.E.3d 443 (Ind. 2021). In support of its undercapitalization allegation, MercAsia pointed to 3BTech's proffered settlement communication on April 27, 2021, wherein 3BTech stated that it "expects to be filing for protection under the bankruptcy laws in the coming months, as it has no sources of income, and few assets." (DE 174-1 ¶ 34(b).) MercAsia additionally cited to correspondence from 3BTech dated April 20, 2021, that confirmed that 3BTech "no longer has any assets to speak of." (*Id.*) It then juxtaposed those statements with the fact that 3BTech's most recent tax returns from before those communication allegedly showed 3BTech had assets in excess of $26 million as well as the fact that MercAsia was still able to purchase a Waerator device despite 3BTech having stated it has no sources of income. Those allegations plausibly allege a potentially rapid decline in 3BTech's assets, which could support MercAsia's overarching allegation that Mr. Zhu is manipulating 3BTech's corporate form to ensure Waerator devices continue to be marketed while avoiding potential legal liability.

### b. Absence of corporate records

MercAsia also alleges that 3BTech fails to maintain adequate corporate records. (DE 174-1 ¶ 34(d).) The inadequacies, according to MercAsia, are apparent from Mr. Zhu's alleged intermingling of the business affairs of 3BTech and the other corporate entities he controls, including generating sales records and communications that do not differentiate between each of the entities' products. They are also apparent, according to MercAsia, because 3BTech, under Mr. Zhu's control, fails to maintain a book of minutes for 3BTech's annual board of directors meetings. (DE 174-1 ¶ 34(d)(i)); *see Cmty. Care Centers, Inc. v. Hamilton*, 774 N.E.2d 559, 566 (Ind. Ct. App. 2002) (recognizing minutes from shareholder and board of directors meetings must be kept as permanent records). Further, MercAsia alleged 3BTech does not maintain profit and loss statements and completely lacks any internal accounting documents despite 3BTech and

14

Mr. Zhu having indicated that 3BTech has a separate accounting department and at least thirty-three employees in its multi-million-dollar operation. (DE 174-1 ¶ 34(d)); *see Community Care Centers*, 774 N.E.2d at 566 ("A corporation must also maintain appropriate accounting records" and "financial statements furnished for the past three years under Indiana Code § 23-1-53-1").

### c. Fraudulent representation by corporation shareholders or directors

MercAsia alleges that Mr. Zhu has made fraudulent representations in his capacity as a 3BTech director. Specifically, it alleges inconsistencies in documents that Mr. Zhu executed for 3BTech that make it unclear who 3BTech's directors actually are. MercAsia alleges the inconsistent documents are an example of Mr. Zhu fraudulently trying to create evidence of 3BTech having annual director meetings when none actually occur. (DE 174-1 ¶ 34(f)(i).) MercAsia additionally alleges that Mr. Zhu's fraudulent activities as a director stretched into his conduct during the course of this litigation when he, in his capacity as a 3BTech director, made false statements about 3BTech's inability to comply with some of MercAsia's discovery requests. (DE 174-1 ¶ 34(f)(ii).)

### d. Use of the corporation to promote fraud, injustice, or illegal activities

The Court has already explored MercAsia's allegations that would fit under this guidepost earlier in the order. To recap, however, MercAsia has alleged that Mr. Zhu is trying to use 3BTech and the other corporate entities he controls to: promote the false narrative to potential customers that the Waerator product contains patented technology; direct business away from MercAsia's product that relies on truly patented technology; and avoid personal liability for that conduct by playing a sort of shell game with the corporate entities he controls. (DE 174-1 ¶ 34(a)(i)–(iv).)

15

e. Payment by the corporation of individual obligations

MercAsia also included allegations that Mr. Zhu "is using at least 3BTech, if not other Zhu Entities, to pay off individual obligations." (DE 174-1 ¶ 34(g).) MercAsia specifically pointed to alleged evidence that Mr. Zhu directed 3BTech funds to another corporate entity as a "loan" that was never properly recorded or paid back. (*Id.*) The "loan" was thus more of a grant, according to MercAsia, and shows Mr. Zhu's readiness to distribute assets between entities he controls or to himself for personal use without adequate recordkeeping and under questionable circumstances. (*Id.*)

f. Commingling of assets and affairs

MercAsia also alleges that Mr. Zhu commingles 3BTech's assets and affairs with the other corporate entities he controls. (DE 34(c).) "In order to be recognized as an entity separate from its shareholders, a corporation should be operated as a distinct and separate business and financial unit, with its own books, records, and bank accounts." *Community Care Centers*, 774 N.E.2d at 569 (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.50) (internal quotations omitted). "Indiana courts will not recognize corporations as separate entities where evidence shows that several corporations are acting as one." *Hipps v. Biglari Holdings, Inc.*, 136 N.E.3d 629, 638 (Ind. Ct. App. 2019). The alleged commingling can be seen in part by the fact that MercAsia claims Mr. Zhu regularly conducts 3BTech business through multiple email accounts, the vast majority of which are either his own personal accounts or accounts belonging to other corporate entities. (DE 174-1 ¶ 34(c)(ii).) The commingled email accounts greatly impeded MercAsia's ability to receive full discovery in this lawsuit because it was often told that the information it was seeking was in emails outside of

3BTech's control. (*Id.*) MercAsia further alleges, based on some 3BTech accounting records it received, that 3BTech's financial documents show commingling between at least three other Zhu-controlled entities' assets and potentially Mr. Zhu's own accounts. (DE 174-1 ¶ 34(c)(iii).)

### g. Failure to observe required corporate formalities

There are also allegations of failures by 3BTech, at the hands of Mr. Zhu, to observe required corporate formalities. "Failure to observe corporate formalities includes such activities as commencement of business without the issuance of shares, lack of shareholders' or directors' meetings, lack of signing of consents, and the making of decisions by shareholders as if they were partners." *Community Care Centers*, 774 N.E.2d at 569 (internal quotations omitted). MercAsia alleges that 3BTech documents show "significant irregularities" in convening annual shareholder meetings, including documents from 2017 that appear to establish that 3BTech held its annual shareholder meeting two different times on the same day, that the meetings were held without proper notice to shareholders, and that there was no waiver to justify the lack of notice. (DE 174-1 ¶ 34(e).) MercAsia additionally alleges that "discovery improperly withheld from [it] will show additional instances of Mr. Zhu and 3BTech failing to observe required corporate formalities to promote fraud and injustice." (*Id.*)

### h. Other shareholder acts or conduct

Finally, MercAsia alleges other acts and conduct by Mr. Zhu in support of bringing Mr. Zhu into the case in his individual capacity. Specifically, MercAsia pointed to a separate lawsuit in which Mr. Zhu allegedly filed counterclaims against a prior counsel seeking relief in his personal capacity and in his official capacity on behalf of 3BTech. MercAsia alleges that the only entities that actually engaged the prior counsel were two other entities Mr. Zhu allegedly

controls, not 3BTech. (DE 174-1 ¶ 34(h).) Thus, Mr. Zhu's filing of a counterclaim in his individual capacity and in his official capacity on behalf of 3BTech shows that Mr. Zhu readily ignores the corporate form not only of 3BTech but also of the other corporate entities he controls and views harm done to the corporate entities he controls as harm done to himself personally. (*Id.*)

* * *

The allegations in MercAsia's proposed supplemental complaint fit into the established guidepost categories for veil piercing and suggest the supplemental complaint would not be futile as 3BTech has argued. (DE 178 at 6, 11.) If it were presented with a motion to dismiss as 3BTech proposes, the Court would have to construe MercAsia's supplemental complaint in the light most favorable to MercAsia while accepting all of MercAsia's factual allegations as true and drawing all reasonable inferences in MercAsia's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Nothing in 3BTech's futility arguments suggests 3BTech would succeed on such a motion and the Court thus cannot find allowing the supplemental complaint would be futile.

3BTech largely premises its futility argument on disputing the accuracy of the allegations MercAsia makes in its proposed supplemental complaint. (DE 178 at 6.) For example, 3BTech responded to MercAsia's allegations about Mr. Zhu commingling his personal assets with 3BTech's assets by broadly stating, without any citation, that "MercAsia has no evidence" of commingling and that "Mr. Zhu and 3BTech have separate bank accounts." (DE 178 at 9.) 3BTech also offered broad denials of various other MercAsia allegations, stating that it "follows corporate formalities," that it "maintains formal business records," that it "is not logical" that Mr. Zhu would undercapitalize 3BTech simply to avoid liability in this lawsuit, and that it and Mr.

Zhu are legally using alternate corporate entities to complete service work and hold intellectual property for the Waerator product. (DE 178 at 7–9.) The Court acknowledges that each of these arguments, assuming there are facts to support them, may be valid and ultimately defeat MercAsia's attempt to hold Mr. Zhu individually liable under a veil piercing theory. But those arguments, which simply dispute the accuracy of MercAsia's allegations, must be saved for, at earliest, the summary judgment stage when the Court can more readily address the facts that each side can bring to either support or defeat MercAsia's claims. A disagreement with the allegations or a feeling that the facts will eventually show them to ring hollow is not enough to succeed at the motion to dismiss stage and show futility in this case. *See Reynolds*, 623 F.3d at 1146.

For now, the Court finds that MercAsia's factual allegations already described in detail above, when taken together, plausibly suggest that piercing the corporate veil and holding Mr. Zhu individually liable in this lawsuit may be appropriate. The allegations sufficiently suggest that the corporate form may be so ignored, controlled, or manipulated that it is merely the instrumentality of Mr. Zhu and that Mr. Zhu's personal misuse of the corporate form plausibly has caused the perpetration of the fraud at the center of this case and would promote injustice by allowing him to escape full liability for his conduct by hiding behind a corporate shield. *See Escobedo*, 818 N.E.2d at 934–35. A renewed motion to dismiss the claims against Mr. Zhu as an individual would be denied based on the strength of MercAsia's allegations and the other reasons described above in this order and itself would be futile. 3BTech's arguments against MercAsia's allegations can be more fully considered at a later stage of these proceedings when the Court can properly dig into the facts underlying the "highly fact-sensitive inquiry" that is an attempt to pierce the corporate veil. *See Four Seasons*, 870 N.E.2d at 504.

### 3. Undue Prejudice

Having resolved 3BTech's futility argument in favor of allowing MercAsia to file the supplemental complaint, the Court turns finally to 3BTech's argument that it and Mr. Zhu would be unduly prejudiced by MercAsia's filing of the supplemental complaint. 3BTech contends that, because fact discovery has now closed, neither it nor Mr. Zhu "would have any opportunity to propound any discovery relating to the 'corporate veil' factual issues raised in the proposed" supplemental complaint if MercAsia is allowed to file. (DE 178 at 9.) 3BTech stated that its concern specifically stems from MercAsia's allegations about activities related to the other corporate entities with which Mr. Zhu is involved. (*Id.* at 10.)

3BTech's prejudice argument falls short though. All of the "new" information MercAsia pointed to in its supplemental complaint "is entirely in the exclusive possession, custody, and control of Mr. Zhu and his companies" and was only brought to MercAsia's attention because 3BTech, Mr. Zhu, or a third-party entity with which Mr. Zhu is involved produced that information to MercAsia during discovery. (DE 181 at 8–9.) 3BTech and Mr. Zhu, who has kept up a presence in this litigation despite no longer being named as an individual defendant (DE 46; DE 89-2 ¶¶ 6–7; DE 150-1 ¶ 2), thus do not need to propound any formal discovery on MercAsia or the other corporate entities under the circumstances because they either have the information already or have ready access to it given Mr. Zhu's involvement with the third-party corporate entities. Additionally, any potential extra time it takes to gather that information will not be unduly prejudicial to 3BTech or Mr. Zhu because there are no impending deadlines, like a trial date, to meet and because the proceedings in the case have already been anything but prompt due in large part to 3BTech and Mr. Zhu's reluctance to fully participate in discovery. *See Pierce v. Sys. Transp., Inc.*, 2004 WL 2481038, at *4 (N.D. Ill. Nov. 2, 2004) (finding no undue prejudice in part because the defendants had contributed to a lack of timeliness in the three-year-old case

and because there was no trial date set). Based on those facts, the Court cannot find that 3BTech and Mr. Zhu would be unduly prejudiced by MercAsia's filing of its supplemental complaint.

## III.  Conclusion

For the foregoing reasons, the Court DENIES MercAsia's motion to seal (DE 173) and GRANTS MercAsia's motion for leave to amend and supplement its first amended complaint (DE 174). The Court DIRECTS the Clerk to unseal docket entries 174, 174-1, and 174-2 as well as docket entries 175 and 175-1. Docket entries 175-2, 175-3, and 175-4 will remain sealed for the time being and will be unsealed if neither party files a new motion to seal within fourteen (14) days of the date of this order. The Court further DIRECTS the Clerk to file MercAsia's attached First Supplemental Complaint as a separate docket entry (DE 174-1).

SO ORDERED.

ENTERED: March 24, 2022

　　　　　　　　　　　　　　 /s/ JON E. DEGUILIO
Chief Judge
United States District Court