UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MERCASIA USA LTD, | |
| Plaintiff, | |
| v. | CASE NO. 3:17-CV-718-JD-MGG |
| JIANQING ZHU, et al., | |
| Defendants. | |

**ORDER**

Pending and ripe before the Court are four matters that all arise from this Court's Opinion and Order dated March 1, 2021. All are addressed below in turn.

**I.  RELEVANT BACKGROUND**

On March 1, 2021, this Court granted Plaintiff MercAsia USA Ltd.'s Motion to Compel and granted in part and denied in part MercAsia's Second Motion to Compel. [DE 146]. The Court reached these conclusions after reviewing full briefing of MercAsia's two motions to compel, which were ripe on March 27, 2020 [DE 66], and July 15, 2020 [DE 106], respectively; considering the parties' status report, filed on January 27, 2021, regarding their progress toward resolution of the discovery disputes at issue in the motions to compel [DE 143]; and hearing from the parties at a telephonic motion hearing on February 1, 2021 [DE 144]. Citing Defendant 3BTech, Inc.'s failure to demonstrate that its delayed and incomplete responses to MercAsia's discovery requests were substantially justified or that extenuating circumstances would make an award of motion-related expenses unjust, the Court awarded MercAsia "its reasonable

expenses, including attorney's fees, incurred in bringing its motions to compel dated March 6, 2020 [DE 66] and June 24, 2020 [DE 106]." [DE 146 at 10–11].

As ordered, MercAsia timely filed a Statement of Expenses comprised of $294,699.00 in attorney's fees and $3,847.85 in costs, for a total of $298,546.85 on March 15, 2021. [DE 148 at 1]. On the same day, 3BTech filed its Motion for Reconsideration of Award of Attorneys' Fees [DE 150] asking the Court to find that its discovery conduct at issue in the motions to compel was substantially justified and that extenuating circumstances would make an award of Rule 37(a)(5) expenses, including fees, to MercAsia unjust. Through its Motion to Reconsider, 3BTech is not asking to be relieved of the discovery obligations imposed by the Court's Order. Rather, 3BTech argues that its decision not to produce reports from its financial database without a Court order were justified as MercAsia had not asked for the reports to be generated in its original discovery requests. Additionally, 3BTech alleged that its former counsel was responsible for its lack of knowledge of its discovery obligations and ultimately for the delayed and incomplete discovery responses. In support of this argument, 3BTech filed a Declaration from its CEO, Jianqing "Johnny" Zhu[1]. [DE 150-1].

To rebut Mr. Zhu's Declaration, MercAsia filed a Declaration from 3BTech's former counsel, Michael Marston. [DE 164]. On March 31, 2021, 3BTech's Motion for Reconsideration became ripe. In the meantime, 3BTech had filed an Objection to the

---

[1] Mr. Zhu was recently added as a defendant in this action. [*See* DE 192 & 193].

2

reasonableness of MercAsia's Statement of Expenses to which MercAsia replied on April 6, 2021.

With these matters pending, MercAsia filed its "Motion for Determination of Privilege Pursuant to Fed. R. Civ. P. 26(b)(5)" [DE 167] to resolve the question of whether information referenced in Mr. Marston's Declaration was privileged. The Privilege Motion was fully briefed by June 11, 2021. Mr. Marston and his law firm, Botkin Hall, then filed a Motion to Intervene [DE 186] on January 7, 2022, arguing that any decision by this Court about Mr. Marston's conduct as 3BTech's counsel in this action would affect their defense of 3BTech's ongoing legal malpractice claim against them in Indiana state court. Additionally, Mr. Marston and Botkin Hall contend that no party in this action is motivated to fully represent their interests. The Motion to Intervene became ripe on January 27, 2022.

The key to resolving the three pending motions and the dispute over MercAsia's Statement of Expenses is 3BTech's Motion to Reconsider, which will be addressed first.

## II.     3BTech's Motion to Reconsider [DE 150]

Justifications for reconsideration of a court order include mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud. *See* Fed. R. Civ. P. 60(b). Motions for reconsideration serve limited functions, including correcting manifest errors of law or fact or presenting newly discovered evidence. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.* 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted). Motions for reconsideration are not to be used to advance arguments that the Court has already addressed and decided. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d

3

1264, 1270 (7th Cir. 1996); *Stodola v. Finley & Co., Inc.*, No. 2:05-CV-464-PRC, 2008 WL 3992237, at *5 (N.D. Ind. Aug. 21, 2008).

 Here, 3BTech contends that in deciding MercAsia's motions to compel, this Court misunderstood that (1) the information the Court ultimately ordered 3BTech to produce did not exist at the time the motion was briefed or this Court held its hearing; (2) MercAsia's motions to compel did not request the reports the Court ultimately ordered generated and produced; and (3) MercAsia did not ask for the reports until six months after motion briefing was completed. 3BTech's argument is misplaced. The parties' extensive briefing of the motions to compel and the undersigned's discussion with the parties at the February 2021 hearing made clear to the Court—consistent with 3BTech's description here—the contents of MercAsia's discovery requests and the fact that the reports did not exist. 3BTech has not shown otherwise.

 3BTech's second argument fares no better. 3BTech argues that new information, discovered after briefing of the motions to compel was complete, establishes extenuating circumstances that would make an award of expenses to MercAsia unjust. 3BTech lays responsibility for its failure to timely respond to multiple discovery requests, which resulted in the award of Rule 37 expenses to MercAsia, squarely at the feet of its former counsel, Mr. Marston. Through his Declaration, Mr. Zhu states that he and 3BTech's employees were unaware of the deadlines for discovery responses at the time they were due and that he relied upon its former counsel to ensure the timeliness and sufficiency of discovery responses. [DE 150-1]. 3BTech argues that it did not learn that its former counsel had caused the delayed and incomplete discovery responses

until after briefing of the motions to compel was complete. Thus, 3BTech wants the Court to reconsider its award of expenses based on this purportedly new information.

Regardless of any dispute the parties may have as to the veracity of Mr. Zhu's Declaration or the privileged nature of information Mr. Marston may wish to present, 3BTech has not demonstrated that it was unaware of this information during the time after briefing of the motions was complete in July 2020 and before the Court issued its order on March 1, 2021. In fact, 3BTech admits that it was "aware of the deadlines passing without responses or extension requests at the time of the February 1, 2021 hearing." [DE 157 at 2].

3BTech also misguidedly suggests that it was precluded from presenting this ostensibly new evidence, namely Mr. Zhu's Declaration, because briefing on the motions to compel was completed before it knew the relevant information. [*Id.*]. Nothing in the Federal Rules of Civil Procedure or Local Rules for the Northern District of Indiana prevents a party from seeking the Court's permission to supplement the record on a matter before it is decided. Moreover, the undersigned issued no order—oral or written—to prevent any party from supplementing the record. Quite the opposite. On December 18, 2020, the undersigned explicitly sought additional information from the parties by ordering them "to meet and confer then file a status report on or before **January 27, 2021**, informing the Court of specific issues that have been resolved and the scope of any remaining issues." [DE 139 at 1 (emphasis in original)]. The undersigned also offered both parties multiple opportunities at the February 2021 hearing to add "anything else" they wanted to the record. In other

5

words, the undersigned *invited* new evidence on more than one occasion after 3BTech learned about 3BTech's supposedly newfound evidence. Any argument to the contrary is disingenuous at best and raises suspicion about 3BTech's integrity and candor.

Furthermore, 3BTech betrays itself by acknowledging its own strategy for using the allegedly new evidence. Specifically, 3BTech states that rather than attempt to submit the new evidence at the hearing, or before the order was entered, it "deemed it appropriate to submit the evidence in a motion for reconsideration, in the event that fees were awarded." [DE 157 at 2]. Motions to reconsider are disfavored since "the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Martin v. City of Fort Wayne*, No. 1:15-CV-274, 2017 WL 1381358, at *2 (N.D. Ind. Apr. 18, 2017) (internal quotations omitted). "A party seeking reconsideration can't introduce new evidence or legal theories that could have been presented earlier or simply rehash previously rejected arguments." *Id.* Here, 3BTech seems to have planned to withhold evidence relevant to the motions to compel and the award of fees decision with the intent to file a motion for reconsideration if things did not turn out as it hoped. Such an approach abuses the judicial process and prejudices the opposing party by delaying a decision on the merits and increasing the costs of litigation. The record of this case highlights 3BTech's pattern of dilatory conduct on multiple occasions. This pre-planned motion to reconsider only confirms the pattern.

Accordingly, 3BTech's Motion to Reconsider is **DENIED**. [DE 150].

**III.    OTHER PENDING MOTIONS, DE 167 & DE 186**

In deciding 3BTech's Motion to Reconsider, the Court did not need to reach any conclusion as the Mr. Marston's role in 3BTech's discovery conduct. Similarly, the allegedly privileged information implicated in Mr. Marston's Declaration and other documents cited by MercAsia were irrelevant to this Court's deliberations. Therefore, Mr. Marston's interests were not at risk. Accordingly, the Court **DENIES WITHOUT PREJUDICE** MercAsia's Motion for Determination of Privilege [DE 167] and the Marston/Botkin Hall Motion to Intervene. [DE 186]. Should Mr. Marston's conduct or the alleged privileged information be relevant to any other proceedings in this action, the issues can be raised then, if deemed necessary.

**IV.    MERCASIA'S STATEMENT OF EXPENSES**

As noted above, the Court awarded MercAsia "its reasonable expenses, including attorney's fees, incurred in bringing its motions to compel . . . ." [DE 146 at 11]. MercAsia's Statement of Expenses, for $294,699.00 in attorneys' fees and $3,847.85 in costs, thoroughly outlines expenses dating from January 30, 2020, through March 2, 2021. MercAsia's expense logs represent almost 15 months spanning from about six weeks before it filed its first motion to compel on March 6, 2020 [DE 66] until the day after the Court issued its order resolving the motions to compel [DE 146]. The logs include expenses incurred in reviewing discovery responses, discussing discovery disputes via email and telephone, preparing the motions to compel and briefs, preparing other motions and briefs, strategizing with co-counsel, preparing non-party discovery, meeting and conferring with opposing counsel, preparing a status report for

7

the Court, and preparation and participation in the Court's February 2021 related to both the motions to compel and the separate motion for sanctions. In support, MercAsia argues that 3BTech's delayed and incomplete discovery responses necessitated all the logged expenses by forcing MercAsia to pursue motion practice and additional discovery to gathering the information responsive to its discovery requests. 3BTech challenges the scope of expenses as overbroad and inconsistent with the Court's Order.

3BTech is correct. Through its almost $300,000 statement of expenses, MercAsia attempts to expand the scope of the Court's Rule 37 award to include dramatically more than expenses incurred in bringing its motions to compel. The Statement of Expenses includes tasks normally associated with discovery in litigation that this Court did not incorporate into the award. MercAsia also seems to be trying to impose punitive sanctions on 3BTech, which is inconsistent with both the Court's Order and Rule 37's fee-shifting provision. Rule 37(a)(5) is intended to encourage voluntary resolution of discovery disputes and curtail litigants' use of legal processes to "heap detriments on adversaries (or third partis) without regard to the merits of the claims." *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994); *see also Oliver v. Tyson Foods, Inc.*, No. 1:11-cv-120, 2012 WL 1906367, at *1 (N.D. Ind. 2012). Other procedural mechanisms are available to parties during litigation and alternative dispute resolution for recovery of costs, or other sanctions, if needed.

Thus, the Court will not award MercAsia any expenses beyond those incurred in (1) researching and drafting the motions to compel and related filings [DE 66, 67, 68, 72, 106, 107, 108, 118], and (2) preparing for and participating in the portion of the February

8

2, 2021, telephonic hearing addressing the motions to compel. On the Court's own review, the Statement of Expenses includes $50,437.00 for 107.05 hours of attorney work relevant to the motions to compel. [*See* DE 148-2 and 148-3]. None of the $3,847.85 costs reported in the Statement of Expenses are sufficiently related to the motions to compel to be included in this Rule 37 award of expenses[2].

Before confirming any award to MercAsia, however, the Court must consider 3BTech's other challenge to the reasonableness of the Statement of Expenses. Beyond the excessive scope of tasks incorporated into MercAsia's Statement of Expenses, 3BTech contends that the hourly rates, especially for MercAsia's IP counsel from Seattle, Washington, exceed the prevailing rate in this community.

"A reasonable rate is one derived from the market rate for the services rendered. *L.H.H. ex rel. Hernandez v. Horton*, No. 2:13-CV-452-PRC, 2015 WL 1057466, at *1 (N.D. Ind. Mar. 10, 2015) (internal quotation marks omitted) (quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir.2011). "The market rate is defined as the rate for the relevant type of work normally charged by a lawyer of similar ability and experience in the community." *Id.* (citing *Gautreaux v. Chi. Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). "The fee applicant bears the burden of 'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett*, 664 F.3d at 640 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). "If the fee applicant satisfies this burden, the burden shifts to the

---

[2] The costs reported by MercAsia appear to be costs for service of subpoenas and discovery requests, transcript services, and video deposition services. [DE 148-2 at 47]. These are discovery-related costs, not costs incurred related to the motions to compel.

9

other party to offer evidence that sets forth 'a good reason why a lower rate is essential.' " *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1313 (7th Cir.1996)). While district courts should defer to an out-of-town attorney's rate, the Court has discretion, if local attorneys could have performed the same tasks just as well, to apply an hourly rate that local attorneys would have charged for the same service. *L.H.H. ex rel. Hernandez,* 2015 WL 1057466, at *3.

    MercAsia has demonstrated that its counsel's hourly rates of $710 per hour and $550 per hour are indeed their regular rates and are in line for experienced intellectual property attorneys in Seattle, Washington. In fact, the AIPLA 2019 Report of the Economic Survey cited by 3BTech supports this finding identifying the median rate for IP attorneys who are equity partners in a private firm in the "Other West" category as $450 per hour in 2018 with rates for attorneys in or above the Third Quartile, like MercAsia's Washington counsel, of $623 to $769 per hour. Even in Indiana, included in the Report's "Other Central" category, private firm equity partners in or above the Third Quartile reportedly generate $500 to $646 per hour. Moreover, very few of the hours worked on the relevant motions to compel here were billed at the $710 rate. The vast majority of the work was performed by counsel billing at $550—in line with rates in both Washington and Indiana. Thus, the hourly rates for MercAsia's counsel are reasonable despite 3BTech's objection.

    With that said, this Court does not typically see attorneys' fees exceeding $50,000 for two motions to compel, a meet and confer with subsequent status report, and a telephonic motion hearing. Even so, the complexity of the discovery disputes

10

underlying MercAsia's motions to compel makes the 107.05 hours[3] spent on these matters, totaling $50,437.00, reasonable. *See United Consumers Club, Inc. v. Prime Time Mktg. Mgmt.*, Nos. 2:07 cv 358, 3:08 cv 60, 2011 WL 1375160, at *1 (N.D. Ind. 2011) ("The court will consider the length of the motion or memorandum, the complexity of the case, and the amount of authority the document refers to when assessing the reasonableness of the time allotted to the activities."). Accordingly, MercAsia is **AWARDED** its attorneys' fees in the amount of $50,437.00 related to its motions to compel.

**V.  CONCLUSION**

For the reasons outlined above,

  **(1)** 3BTech's Motion for Reconsideration is **DENIED** [DE 150];

  **(2)** MercAsia's Motion for Determination of Privilege [DE 167] and the Marston/Botkin Hall Motion to Intervene [DE 186] are **DENIED WITHOUT PREJUDICE**;

  **(3)** 3BTech is **ORDERED** to pay MercAsia $50,437.00 in attorneys' fees related to its motions to compel [DE 66 and 106] on or before **April 14, 2022**; and

---

[3] On MercAsia's first Motion to Compel [DE 66], the Court attributes 35.55 hours of work totaling $18,164.50 to the Washington attorneys and 4 hours of work totaling $1,500.00 to local counsel. [*See* DE 148-2 and 148-3]. On MercAsia's second Motion to Compel [DE 106], the Court attributes 23.6 hours of work totaling $9,140.00 to the Washington attorneys and 3.7 hours of work totaling $1,387.50 to local counsel. [*See id.*]. On the Court-ordered meet and confer, status report, and telephonic motion hearing, the Court attributed 39.6 hours of work totaling $20,020.00 to the Washington attorneys and .6 hours of work totaling $225.00 to local counsel. [*See id.*].

**(4)**   the Clerk is **DIRECTED** to maintain MercAsia's Unredacted Motion for Determination of Privilege [DE 169] and the accompanying Exhibits A–F [DE 169-2 through 169-7] under seal.

**SO ORDERED** this 31st day of March 2022.

> s/Michael G. Gotsch, Sr.
> Michael G. Gotsch, Sr.
> United States Magistrate Judge