UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MERCASIA USA LTD,

    Plaintiff,

    v.                                                                 Case No. 3:17-CV-718 JD

JIANQING ZHU, et. al,

    Defendants.

## <u>OPINION AND ORDER</u>

This case concerns competing wine aerators. Plaintiff MercAsia alleges that Defendant

3BTech's Waerator 1.0 wine aerator infringes a patent held by MercAsia. In the past, Defendants

contended that the Waerator product lacks one limitation: air ports, multiple of which must be

located above the device's spout in order to literally infringe the patent in question. After claim

construction and multiple years of discovery, Defendants untimely revised their contentions to

state ten limitations absent from the Waerator on the eve of filing this motion for summary

judgment. MercAsia objected in its response under Federal Rules of Civil Procedure 26 and 37.

The Court finds summary judgment on infringement is inappropriate, as a material dispute of

fact remains: whether several identified potential ports qualify as air ports. Further, as a matter of

law, the Court narrows the application of doctrine of equivalents to this case, finding that air

ports located below the spout cannot be the equivalent of those located above the spout. Finally,

the Court holds Defendants' disclosure of nine new contentions untimely and will not consider

them on summary judgment or at trial. Therefore, the Court GRANTS in part the motion for

summary judgment only as to the doctrine of equivalents as discussed herein; to all other issues,

the Court DENIES Defendants' motion for summary judgment.

### A.    Facts

The patent at issue in this case is U.S. Patent no. 7,882,986 ("the 986 Patent"), entitled "Liquid Dispenser," issued to Yi Chung Huang and Yu-Jung Huang on February 8, 2011. The 986 Patent claims a liquid dispenser being mounted in a container having a top, a bottom and a mouth. In 2014, the 986 Patent's rights were assigned to Jingle Master International Ltd, who then granted an exclusive license to MercAsia, the plaintiff in this action. MercAsia uses the technology described in the 986 Patent in its wine aerator, dubbed the "Aervana." Defendant 3BTech makes a similar wine aerator, the "Waerator." MercAsia brought this suit, alleging that the Waerator 1.0 infringes Claim 1 of the 986 Patent in violation of 35 U.S.C. § 271(c) literally or by the doctrine of equivalents, and that the infringement is willful. 3BTech's CEO, Jianqing Zhu, is also a defendant in this action.[1] While not all limitations of the claim are relevant for the purpose of this motion, it is important to know the claim requires multiple air ports and specifies that the spout of the product is below the air ports.

The parties were initially quite active, but in 2018 the action was stayed for eight months pending the outcome of Inter Partes Review. The 2019 decision found Claim 1 of the 986 Patent was not unpatentable, and the litigation resumed. The parties initially sought a trial date in spring of 2021. (DE 55 at 6.) The Court's initial scheduling order, issued November 2019, closed claim construction discovery in March 2020, with fact discovery and expert discovery closing July and October of the same year. (DE 59 at 2.)

---

[1] MercAsia alleges that defendant Jianqing Zhu, a member of the Board of Directors and the CEO of 3BTech, uses his multiple entities as alter egos for the purpose of selling the allegedly infringing products and disguising the proceeds. (DE 193.) Those allegations are not at issue in this motion for summary judgment.

The parties appeared to hum along with discovery, and MercAsia submitted a set of interrogatories to Defendants on January 31, 2020, containing two interrogatories of note for the present motion. Interrogatories 2 and 3 asked Defendants to state what limitations were absent from the allegedly infringing product and how claim construction informed those contentions. Defendants first responded on February 27, 2020, and identified the lack of air ports as their lone contention. (DE 216-7 at 3.) Defendants' second responses, served March 4, 2020, also identified only air ports as the only feature at issue. Defendants did not update these responses until July 1, 2022.

Discovery continued. The parties participated in the claim construction process pursuant to Northern District of Indiana Local Patent Rule 4-1. After the parties submitted terms for construction, the Court issued its claim construction order on June 30, 2020. (DE 110.) Only two terms were defined pursuant to that order, and the parties did not seek the definition of any other terms. (*See* DE 79, "*Joint Claim Construction Chart*.") Those terms are "shell," which the Court found to mean "a protecting or enclosing case or cover," and "air ports," which the Court found to mean "an opening for the passage of air" in the context of the 986 patent. (DE 110 at 5–6.) Though the Court adopted MercAsia's definitions verbatim, at no time did Defendants formally seek rolling construction of these terms or construction of any other terms.

Discovery became a bit contentious. MercAsia filed two motions to compel (DE 66 and DE 106), alleging Defendants failed to produce documents. MercAsia later moved for sanctions for these discovery failures, which were denied (DE 153.) Deadlines began to be pushed. An amended order specifically required Defendant 3BTech to produce all supplemental discovery responses no later than August 31, 2020. (DE 129 at 1.) A subsequent order kicked that deadline to September 11, 2020 (DE 131 at 1.) Another later scheduling order made final supplemental

discovery responses for all parties due September 3, 2021 (DE 183 at 1.) This order was the Court's final word on scheduling; it closed fact discovery on October 18, 2021, and expert discovery on May 31, 2022. On June 2, 2022, the Court entered a text entry formally concluding the discovery period. (DE 202.) The Court then set the deadline for dispositive motions as July 5, 2022. (DE 202.)

On July 1, 2022, Defendants served MercAsia with supplemental responses alleging nine new contentions of noninfringement. On July 5, 2022, just four days later, Defendants filed the present motion for summary judgment. (DE 205.) The motion is now ripe for deciding.

### B.      Legal Standards

#### (1)      *Summary Judgment*

The Court shall grant summary judgment if there is no genuine dispute as to any material fact, such that the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit" under the applicable substantive law. *Id.* In evaluating a motion for summary judgment, the Court must draw all inferences in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, the moving party's burden "may be discharged by showing—that is, pointing out to the district court —that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In short, summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the nonmoving party." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005).

### (2)    Infringement

"Infringement is a question of fact." *Apple Inc. v. Samsung Elecs. Co*., 839 F.3d 1034, 1040 (Fed. Cir. 2016). For infringement, the patentee has the burden of persuasion. *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd*., 983 F.3d 1367, 1380 (Fed. Cir. 2021). To resolve the question of infringement, the Federal Circuit has established a two-step analysis. *CommScope Techs. LLC v. Dali Wireless Inc*., 10 F.4th 1289, 1295 (Fed. Cir. 2021). "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001). In the Northern District of Indiana, the claims are construed in a process governed by Local Patent Rule 4-1, "which is designed to clearly establish the claims at issue early in the litigation." *See Days Corp. v. Lippert Components, Inc.*, No. 3:17-CV-208-PPS-MGG, 2018 WL 1167217, at *1 (N.D. Ind. Mar. 6, 2018); *see also* N.D. Ind. L.P.R. 4-1. If the process described in L.P.R. 4-1 is followed, on summary judgment, the claims have been construed; all that remains is the legal question of infringement.

"To prove literal infringement, the patentee must show that the accused device contains each and every limitation of the asserted claims." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014). If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law. *Amgen, Inc. v. F. Hoffman-LaRoche Ltd*., 580 F.3d 1340, 1374 (Fed. Cir. 2009). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the

claimed elements of the patented invention." *Carnegie Mellon Univ. v. Hoffman-LaRoche Inc*., 541 F.3d 1115, 1129 (Fed. Cir. 2008). However, if the accused product is missing an equivalent element to even one limitation recited in the asserted patent claim, it cannot infringe the claim under the doctrine of equivalents. *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005).

### C.    Discussion

The Court finds a material dispute of fact exists regarding whether the alleged ports identified by MercAsia allow for the passage of air, making them "air ports" under the claim construction order and rendering the Waerator literally infringing. The Court further finds air ports below the spout cannot be the equivalent of those above. The Court also finds Defendants will not be permitted to argue the nine previously undisclosed contentions of noninfringement as a sanction under Rule 37.

### (1)    Air Ports

Summary judgment on infringement is improper because a dispute of material fact exists regarding whether the allegedly infringing product has air ports as defined by the courts claim construction order. The remaining dispute of material fact is clearly outlined in MercAsia's Statement of Disputed Facts. (DE 217 at ¶¶ 14–17.) The parties disagree whether air ports are literally present or present by equivalents. Both sides have supported their argument by adequate evidence, and the factfinder will need to hear evidence and make a credibility determination. Thus, the Court declines to grant summary judgment at this stage, though it does take a moment to narrow the legal scope of the doctrine of equivalents as applied to this case.

(a)      *Factual issue exists regarding whether air ports limitation is literally present.*

As a first step, the Court has already construed the patent claims. (DE 110.) The second step of the infringement analysis involves comparing the properly construed claim with the accused device "to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1088 (Fed. Cir. 1998). A dispute over whether a limitation is present in the allegedly infringing device is material because such a device must contain all the limitations of the claim either literally or by equivalents to infringe the patent. *See Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002) (affirming grant of summary judgment where limitation was not present literally or by equivalent). In this case, the Court has construed "air ports" to "an opening for the passage of air." (DE 110 at 7.) The Court did not require the air ports to be specifically intended for the passage of air—any air flow through an opening will do. A factual issue remains whether the parts diagrammed 24C–24F constitute air ports by allowing for the passage of air. The following pictures, taken from MercAsia's final disclosures may illuminate the dispute:

| U.S. Patent No. 7,882,986 ("the '986 patent") Claim Text | The Waerator Product |
|---|---|
| multiple air ports [24A 24B, 24C, 24D, 24E, 24F] being formed through the shell [10] between the bottom [11] and the top end [12]; | Air ports can be found in the product wherever air is permitted passage through the shell (10). For example, as shown in the annotated photograph below, the lower shell housing (10B) includes multiple air ports(24A, 24B), formed through the shell between the bottom and the top end of the shell. |



Additionally, at least one air port (24C) can be found through the shell (10) between the bottom (11) and the top end (12) because the opening around the switch (60) permits the passage of air through the shell (10):

| U.S. Patent No. 7,882,986 ("the '986 patent") Claim Text | The Waerator Product |
|---|---|
| | Further, additional airports (24D, 24E) can be found at openings through the shell (10) between the bottom (11) and the top end (12) because the portions of the shell (10) permit the passage of air through the shell, as shown in the annotated photos below: |



*See* DE 216-11 at 11–12. The parties do not agree regarding whether the parts

diagrammed 24C–24F allow for the passage of air. If they do, the Waerator literally infringes. As

one can see, MercAsia points to several potential ports (labels beginning with 24). Defendants

contend the seams do not allow for the passage of air unless the product is disassembled, and the

images on the right show the Waerator's seams broken open. (DE 206 at 26.)[2] The fact finder will have to determine whether air passes through the apparent seams, as the reports of the experts conflict, and the Court is not in a position to resolve this issue as a matter of law.

(b)      *Doctrine of equivalents is limited, as no reasonable jury could determine "below" to be equivalent of "above."*

The Court finds that while a question of fact still remains regarding whether there are air ports above the spout, the Court forecloses as a matter of law the argument that air ports that occur at any point below the spout could be found to be equivalent under the doctrine of equivalents to those above the spout. The spout is the thin, downward-curving unlabeled silver protrusion closest to the number 11 in the contention photographs. "Under the doctrine of equivalents, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Freedman Seating Co. v. Am. Seating Co*., 420 F.3d 1350, 1358 (Fed. Cir. 2005). Determination of infringements by equivalents is a question of fact, but whether a patentee can avail itself of the doctrine of equivalents implicates certain questions of law. *Interactive Pictures Corp. v. Infinite Pictures, Inc*., 274 F.3d 1371, 1376 (Fed. Cir. 2001). Although equivalence is a factual matter

---

[2] Defendants argue MercAsia has not met their burden because no expert testimony was offered. In a case involving complex technology, if the accused infringer offers expert testimony, the patentee cannot satisfy its burned of proof by relying only on testimony from non-experts. *Centricut, LLC v. Esab Grp*., Inc., 390 F.3d 1361, 1370 (Fed. Cir. 2004). MercAsia erred by failing to include a previously disclosed expert on its final contention disclosures, which it later cured. The Court finds this late disclosure harmless because the Court is not convinced this technology is highly complex, MercAsia does not assert its case relies on the opinions of non-experts, and Defendants were already aware that the expert was used in the preliminary contentions, which were extremely similar if not identical to MercAsia's final contentions. *See Days Corp. v. Lippert Components, Inc.,* No. 3:17-CV-208-PPS-MGG, 2018 WL 1167217, at *5 (N.D. Ind. Mar. 6, 2018).

normally reserved for a fact finder, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 39 n.8 (1997). The language of Claim 1 requires "multiple air ports being formed through the shell between the bottom and the top end;" the claim goes on to specify that the object has "a spout being mounted on and *protruding from the shell below the air ports*." Given this language, the operative question is whether the object has more than one air port, or equivalent of an air port, above the spout. But, given the claim language, a fact finder could not reasonably find an air port below the spout was the equivalent of one above the spout, as that would vitiate the limitation.

Air ports in the opposite location relative to the spout could not be equivalent because such a finding would entirely vitiate the limitation. *Warner-Jenkinson*, 520 U.S. at 29. "There is no set formula for determining whether a finding of equivalence would vitiate a claim limitation, and thereby violate the all-limitations rule. Rather, courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co*., 420 F.3d 1350, 1359 (Fed. Cir. 2005). Permitting an inconsistent element in the accused product to come within the bounds of the claimed element impermissibly extends the scope of the claim language beyond what the patentee actually claimed. *Novartis Pharms. Corp. v. Abbott Lab'ys*, 375 F.3d 1328, 1339 (Fed. Cir. 2004) (finding a surfactant could not be equivalent to a non-surfactant). It is not dispositive that the devices operate in functionally the same manner regardless of the directional limitation. *Chamberlain Grp., Inc. v. Lear Corp*., 756 F. Supp. 2d 938 (N.D. Ill. 2010) (denying summary judgment where "it is undisputed that the accused product achieves

substantially the same result as the claimed invention"). Rather, the test is whether the *element* of the accused product is substantially the same as a claim limitation. *Warner-Jenkinson*, 520 U.S. at 29. It is not relevant whether the limitation was thought by the inventor to be essential to his invention, and minor directional limitations have been enforced in prior cases. *See Cooper Cameron Corp. v. Kvaerner Oilfield Prod.*, Inc., 291 F.3d 1317, 1322–23 (Fed. Cir. 2002) (finding no equivalent for directional term and holding there is no "essential element test").

MercAsia will not be permitted to argue at trial that any air ports or their equivalents that exist at any point *below* the spout are the equivalent of the prescribed air ports *above* the spout. Where the claim specifies a term, a term's opposite cannot be its equivalent. *See Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) ("before" not equivalent to "after"); *Asyst Techs., Inc. v. Emtrak,* Inc., 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("mounted" not equivalent to "unmounted"); *Moore U.S.A., Inc. v. Standard Reg. Co*., 229 F.3d 1091, 1106 (Fed. Cir. 2000) (rejecting equivalence between 48% and 50.001% where claim specified "majority"). Where a patentee has narrowly construed his invention by including a limiting directional term, the Court cannot disregard this term by finding contrary directional term to be its equivalent. *See Sage Prod., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1424 (Fed. Cir. 1997) (affirming grant of summary judgment and finding "in" not equivalent to "on top of"); *see also Fin Control Sytems Pty, Ltd. v. OAM, Inc*., 265 F.3d 1311, 1320–21 (Fed. Cir. 2001) (affirming refusal to read out "lateral" limitation via doctrine of equivalents). As applied to this action, any port that occurs at any point below the spout will not qualify as one of the multiple air ports required for the purpose of the limitation. This includes 24A and 24B, to the extent these ports have an entry or

exit below the spout.[3] Even if the opposite ends of the 24A and 24B ports exit somewhere above the spout, they could not be construed as being above the spout, as they would be more accurately described as "even with" or "beside." *See Cooper Cameron*, 291 F.3d at 1323 ("above" not equivalent to "between"); *see also* Court's Order Denying Motion for Preliminary Injunction, (DE 38 at 9) (spout partially below and partially above air ports not "below the air ports" for the purpose of this claim).

The Court is further convinced that the "below" limitation should not be read out by overbroad application of the doctrine of equivalents after considering the 986 Patent's specification and the prior art. A court may properly consider the patent's specification, which includes a description of the prior art, in determining whether an element is equivalent. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). "A patentee may not assert a scope of equivalency that would encompass, or ensnare, the prior art." *Intendis GMBH v. Glenmark Pharms. Inc.*, USA, 822 F.3d 1355, 1363 (Fed. Cir. 2016). The Court fears reading out the directional terms present in the 986 Patent would impermissibly expand the scope of the patent to cover the prior art. The 986 Patent rests on relatively fine distinctions when compared to the prior art of liquid dispensers, and the Federal Circuit has held that "for a patentee who has claimed an invention narrowly, there may not be infringement under the doctrine of equivalents in many cases, even though the patentee might have been able to claim more broadly." *Sage*, 126 F.3d at 1424–25 (denying a broad reading of equivalents where "[t]he claim at issue defines a relatively simple structural device. A skilled

---

[3] The Court is working from photos of the allegedly infringing device that show 24A and 24B only from the bottom view, making this inquiry less than entirely certain. *See supra* at 8. In the event MercAsia shows no part of the ports is below the spout, they may, of course, argue that these features constitute air ports and infringe either literally or by the doctrine of equivalents.

patent drafter would foresee the limiting potential of the 'over said slot' limitation… If [plaintiff] desired broad patent protection for any container that performed a function similar to its claimed container, it could have sought claims with fewer structural encumbrances."). Writing of such fine distinctions, the Federal Circuit noted "many limitations warrant little, if any, range of equivalents." *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000). Given the narrow language of the 986 Patent, the Court is not persuaded that a broad reading of the equivalents is appropriate, especially where claimed directional limitations would be disregarded. Accordingly, the Court finds a factfinder could not properly read out the directional term "below," and air ports occurring at any point below the spout cannot satisfy the claim limitation.

### (2)    *Noninfringement contentions other than lack of air ports*

The Court need not invite Defendants' nine new noninfringement contentions into the already prolonged life of this lawsuit because they were untimely disclosed, causing great prejudice to MercAsia. The Court further finds this exclusion justified because the new contentions are not likely to be successful on the merits, as the single briefed new contention upon summary judgment is not persuasive and is inappropriate at this stage of the case.

### (a)    *The new contentions are excluded pursuant to Rule 37.*

Defendants identify "at least ten" noninfringement contentions on summary judgment. (DE 206 at 5.) The volume of contentions at issue on summary judgment was surprising to both the Court and MercAsia, because Defendants have espoused only one contention throughout the life of this case: that the allegedly infringing product lacked air ports. Defendants disclosed their

nine new contentions in a supplemental response to MercAsia's second and third interrogatories served after discovery. Though Defendants argue ten contentions are at issue, only one new, non-air ports contention is briefed in the summary judgment motion. The Court finds these previously undisclosed positions are untimely and in violation of Federal Rules of Procedure 26 and 37, and the Court will not reward Defendants' abuse of the discovery process by considering them now.

MercAsia argues the untimely disclosed positions should be barred under Federal Rule of Civil Procedure 37(c) for Defendants violation of Rule 26(e). Rule 26(e) requires a party who has responded to an interrogatory to supplement or correct its response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. *See* Fed. R. Civ. Pro. 26(e)(1)(A). Rule 37(c) instructs that if a party fails to provide information as required by Rule 26(e), the party is not allowed to use that information on a motion, at a hearing, or at a trial, unless that failure was substantially justified or is harmless. *See* Fed. R. Civ. Pro. 37(c); *see also Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2022) (excluding evidence based on failure to timely supplement interrogatory response). At issue are updated responses to MercAsia's Interrogatories 2 and 3, which are contention interrogatories. Defendants' first responses, served February 27, 2020, identified the lack of air ports as Defendants' lone noninfringement contention. (DE 216-7 at 3.) Defendants' first supplemental responses, served March 4, 2020, largely maintained that position while adding a bit of legalese. The first supplemental responses read as follows:

>    Interrogatory No. 2: If you contend that an element from an asserted claim is absent in the 3BTech products, state the factual basis as to why any such element is absent from each 3BTech product.
>
>    **Response**: While claim construction is not complete, as an initial matter, 3BTech's products lack air ports through the shell. Defendant reserves the right to supplement this answer depending on claim construction and any information revealed during discovery.

Interrogatory No. 3: If you contend that an element from an asserted claim is absent in the 3BTech products, state the complete factual basis as to how each claim term you have identified for construction informs that contention.

**Response**: While claim constructions is not complete, 3BTech contends that air ports are holes specifically formed through a component for the specific purpose of allowing the passage of fluid. 3BTech products lack these features. Defendant reserves the right to supplement this answer depending on the Court's claim construction order.

*See* DE 216-10 at 6–7. The Defendant's second supplemental responses to the contention interrogatories were served after the close of discovery on July 1, 2022, nearly two years after Defendants' first supplemental responses. (DE 216-13 at 6–9.) Their response to Interrogatory 2 adds nine never-before-seen contentions, such as:

9.      "*a pressure release tube…having… an air outlet extending to the top end of the shell and having a relief valve seat*"

To the extent 3BTech products have structures that can be considered to be a pressure release tube and a shell, the pressure release tube does not extend to the top end of the shell, and does not include a relief valve seat.

10.      "*a switch being movably mounted in and protruding from the top of the shell,*"

To the extent the 3BTech products have structures that can be considered to be a switch and a shell, the switch does not protrude from the top of the shell.

(*Id*.) The other new contentions are similar in flavor: they seemingly dispute the meaning of terms that were not subject to definition in the Court's claim construction order, and they dispute the presence of limitations in the Waerator. These sorts of contentions are run of the mill and unobjectionable *if they are timely disclosed* such that the Court may address them in claim construction and the opposing party may gather discovery and develop theories regarding the literal presence of the limitations. However, Defendants' disclosure of its new contentions was unquestionably untimely for two reasons. First, they came long after Defendants' could or would

have known their responses were incomplete. Second, they came after the close of the court ordered discovery period and after several orders from the court to supplement their disclosure. Further, the Court finds that Defendants have not shown substantial justification nor harmlessness. Therefore, the Court finds the nine previously undisclosed contentions should be excluded from this action both on motion for summary judgment and for trial.

### (i)   The disclosures are untimely.

As an initial point, the July 2022 supplemental interrogatory responses are untimely because they were served years after Defendants could or would have learned the disclosure is incorrect or incomplete. Rule 26(e) requires a party to timely amend its disclosures if the party learns the disclosure is incorrect or incomplete. But Defendants have provided the Court with no timeline of when they "discovered" these new contentions, such as by pointing to discovery that informed the new theories. *Compare O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (where party pointed to deposition explaining a component's operation as informing the new contention). Without such a defense, the Defendants have not stated a prima facie argument that they timely amended their disclosures after learning that they were incomplete, and the Court sees no reason why Defendants would not have been on notice of the additional contentions *years* prior to serving them upon MercAsia. Further, the Court notes Defendants would have learned their March 2020 response to Interrogatory 3 was no longer correct or complete when the Court issued its claim construction order on June 30, 2020, as Defendants' response explicitly hinges on the outcome of that order. Nevertheless, Defendants did not supplement that or any other interrogatory for more than two years. While "timely" is not defined by the Rule, in the patent context, the window for proper disclosure of newly developed

contentions is comparatively tight—the Federal Circuit found a hypothetical three-month delay after learning of information relevant to the new contention untimely. *See O2*, 467 F.3d at 1367. The Court cannot find any reason—nor has one been offered—why supplementing a clearly incomplete response two years later and after the close of discovery would be timely. *Cf. Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) (defendant not allowed to untimely update claim chart with new defense where no satisfactory reason for late amendment offered).

The violation is more flagrant in this case because the disclosures are not merely too late under the guidepost of when the information was discovered; the disclosures are also untimely under the Court ordered discovery schedule. While the deadline for final supplementary discovery responses was September 3, 2021 (DE 183), Defendants did not notify MercAsia of their updated responses to the contention interrogatories until July 1, 2022, nearly ten months after the deadline. (DE 216-13 at 9.) This disclosure came after being put on notice of the incompleteness of their responses by the claim construction order in June 2020, after twice being ordered by the Court to supplement their responses in fall 2020, after the final court-ordered deadline to supplement responses in September 2021, after the Court's scheduled close of discovery in May 2022, after the Court's June formal order concluding discovery, and only four days before the dispositive motion deadline. The lateness is extraordinary, and the Court finds a sanction of exclusion under Rule 37 appropriate. *See generally David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (discussing automatic exclusion under Rule 27 for violations of Rule 26). Although the text of Rule 26 does not specifically define "untimely," the facts of the present disclosure closely track those in which courts have previously found untimely disclosure. The Court finds *Morris v. BNSF* instructive; in that case, the Seventh Circuit affirmed the district

court's ruling excluding witnesses disclosed after the close of discovery from testifying at trial. 969 F. 3d 753, 766 (7th Cir. 2020). In *Morris*, the disclosures were supplemented after the close of a three-year discovery period and on the eve of trial, a series of events echoed by the present circumstances. The reviewing court found the district court did not abuse its discretion in excluding the late disclosed evidence because the disclosures came too late, and the defendant had "no good reason" for the untimeliness. *Id.*; *see also Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005) (disclosure offered after the close of discovery is untimely unless justified); *SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (affirming exclusion of claim construction and infringement arguments made after court ordered cut-off date). In another similar case, the Seventh Circuit affirmed the exclusion of the untimely disclosed evidence and derided the party's late disclosure, writing, "This is not a case where the disclosure was late by a trivial amount of time. In fact, the [late-disclosing plaintiff] never attempted to disclose any witnesses as experts *until the defendants moved for summary judgment.*" *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758–59 (7th Cir. 2004). The Court went on to find the delay prejudicial and unjustified, especially considering how crucial and likely to be contested the undisclosed evidence was, a circumstance undeniably mirrored here. *Id.* at 759. The Federal Circuit's enforcement of timeliness goes further yet, affirming a district court's exclusion of evidence disclosed "on the very last day of discovery" as untimely under Rule 26. *Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1376 (Fed. Cir. 2008). Clearly, a pivotal disclosure made after the close of discovery and on the eve of summary judgment is untimely.

>          *(ii) The failure was not substantially justified.*

Untimely disclosures under Rule 26 will not be sanctionable under Rule 37 if the failure is substantially justified or is harmless. Defendants do not present a persuasive justification regarding why the delay was justified. *Compare Sci. Applications Int'l Corp. v. United States*, 153 Fed. Cl. 485, 496 (2021) (later disclosures may justify seeking leave to amend if party could not form contention until after deposing witness). Instead, Defendants justify their untimely disclosures by arguing that interrogatories seeking the discovery of a party's infringement contentions are premature before the close of discovery as a rule. (DE 218 at 5.) This conception of the discovery and contention processes does not comport with the modern understanding in patent cases. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("But we see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence. If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation."); *see Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1018 (Fed. Cir. 2019) (affirming exclusion of untimely infringement disclosures and noting "the notice function served by infringement contentions"). This is clearly not how the patent discovery process is designed to work, and the Court is not persuaded that this argument justifies the untimely disclosure.

Defendants also argue that MercAsia's objection to these theories on summary judgment is somehow procedurally improper based on its vague, boilerplate language that it "reserves the right" to amend its March 2020 responses. (DE 218 at 5–7.) The argument is, in essence, that if MercAsia wanted earlier disclosure of Defendants' contentions, it should have moved to compel them, and absent such a motion, Defendants' inclusion of "right to reserve" language justified

their untimely response. First, Defendants' position that their earlier discovery response could "reserve the right" to properly respond later is untenable. *See Days Corp. v. Lippert Components, Inc.*, No. 3:17CV208, 2019 WL 6876634, at *2 (N.D. Ind. Dec. 17, 2019) (finding invalidity contention reserving the right to make changes was "self-serving" and did not modify the parties' obligations under local patent rules); *see also MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 421 (2017) (writing of a party's unjustified and untimely change in defense in patent case: "It would be intolerable to case management if one party could simply reserve to itself the right to change its substantive positions without cause."). Second, the crux of Defendants' argument is that MercAsia should have anticipated that Defendants were concealing noninfringement contentions—based apparently on the boilerplate language—and moved to compel these positions. The Court does not find this argument persuasive, as it reverses the burden of Rule 26, which creates an affirmative duty to disclose. *Barnett v. Menard, Inc*., 851 F. App'x 619, 623 (7th Cir. 2021), cert. denied, 212 L. Ed. 2d 13, 142 S. Ct. 1119 (2022) (rejecting argument that party could use late-disclosed evidence at trial because opposing party did not specifically request it). It is not the duty of the opposing party to manage one's required disclosures, and accepting Defendants' theory would mean accepting that a party subject to improper supplementation post-discovery would have no recourse, an unfair result the Court declines to endorse. Further, this argument ignores that Defendants were specifically court ordered to supplement their disclosures twice, and a final scheduling order again reminded both parties to supplement their responses. (DE 129; 131; 183.) Even if there was some duty to remind Defendants to supplement their responses, they were reminded by the Court several times and never took action. The Court finds Defendants have not stated a substantial justification for the untimely disclosure.

*(iii) The failure was not harmless.*

It is clear the disclosure of the nine new contentions was untimely and without justification. The Court now considers whether the late disclosures were harmless and finds they were not. The Seventh Circuit has "indicated several factors that a district court should consider in deciding whether non-compliance with Rule 26[] is harmless: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in note disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012), as amended (Feb. 2, 2012). The Court finds the late disclosure was highly prejudicial to MercAsia, that the prejudice is not readily cured, and that the prejudice is caused in no small part by the bad faith or willfulness of the Defendants. "[C]ontention interrogatories serve an important purpose in enabling a party to discover facts related to its opponent's contentions." *Woods v. DeAngelo Marine Exhaust, Inc.,* 692 F.3d 1272, 1282 (Fed. Cir. 2012). From the Defendants' first disclosures and up until the July 1, 2022, disclosure, it appeared the infringement case would focus solely on the air ports contention. The opposing party and the Court have proceeded under that well-founded assumption for several years at this point, and MercAsia has no doubt developed its theory of the case based on this sole contention alone. Allowing these untimely disclosed contentions to shape the case would essentially require the parties to start over at square one, an extreme result that the Court does not find to be justified in this case. The volume of the discovery required for MercAsia to meaningfully prepare a case challenging Defendants' contentions as well as the number of terms that would require claim

construction renders the cost of reopening discovery to accommodate these new contentions probative.

Defendants argue there was no prejudice because the late disclosure could be cured by reopening discovery, a remedy which MercAsia declined. (DE 215.) But the Court is not required to allow discovery to extend forever in order to cover Defendants' mistakes or willful noncompliance. *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp*., 285 F.3d 609, 616 (7th Cir. 2002) (district court did not abuse discretion by sanctioning late disclosure as harmful where suit was seven years old and nondisclosure may have been strategic). "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or extend discovery. If that were the determining factor, no court could preclude expert or other testimony that was unseasonably disclosed contrary to the discovery deadline dates set by the Court." *Hard Surface Sols., Inc. v. Sherwin-Williams Co*., 271 F.R.D. 612, 617 (N.D. Ill. 2010). Several factors caution against reopening discovery. First, this case is old and only growing more overripe. Defendants have had five years to develop their noninfringement theories, including two years of unbridled discovery, which should be enough by any reasonable measure. Second, as the Court has alluded to above, it appears this violation was willful. A violation is not willful where it is not an ambush tactic, which may be evidenced by a party's demonstrating "early notice, diligence, new evidence, and/or leave obtained from the district court—none of which apply here." *Phigenix, Inc. v. Genentech, Inc*., 783 F. App'x 1014, 1020 (Fed. Cir. 2019). The Court cannot think of a reason (other than litigation by ambush) why Defendants could not have served these noninfringement contentions earlier, nor have Defendants provided one. Defendants missed roughly five deadlines to supplement their disclosures, despite being specifically ordered to do so by the Court twice; the Court can only conclude Defendants have chosen not to comply.

Allowing a willful violation to reset the discovery schedule amounts to ceding judicial control to a litigant acting in bad faith. "A party does not have the option of complying with those deadlines or ignoring them and then demanding that the court and the opposing party restructure the discovery schedule to accommodate the violation." *Hard Surface Sols*., 271 F.R.D. at 617. The Court is not required to reward unsavory tactics, and it will not. For these reasons, the Court does not find reopening discovery would cure the prejudice.

       *(b)*      *Even if the Court considered these arguments, they are unlikely to be successful.*

While the Court generally prefers to decide the case on the merits, the Court does not lose any sleep over excluding additional nine contentions because it does not believe they are likely to be meritorious. Defendants brief only one of their new contentions. (DE 206 at 13.) Defendants argue the allegedly infringing product does not contain an "air inlet being connected to the injection tube *near* the upper end *opposite* to the spout" as specified by the limitation language of Claim 1. (*Id*.) The entire argument is predicated on the definitions of the words "near" and "opposite." If this claim is representative of the other previously undisclosed contentions, as it appears to be, the contentions are not meritorious because they rely on strained definitions, the introduction of which after claim construction is prejudicial to the opposing party under the particular circumstances of this case.

       *(i)*      *The interpretation of common words is strained and violates the plain meaning rule.*

The single new claim briefed relies on strained and self-contradictory interpretations of basic language. "A basic principle of claim construction is that "the words of a claim are

generally given their ordinary and customary meaning." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014). Defendants attempt to define directional terms "near" and "opposite." (DE 206 at 14.) The definition of "near" starts off well; the Defendants define it according to Merriam-Webster Online as "at, within, or to a short distance or time." *Id*. The Court assumes it could hypothetically find that proposed definition comports with the plain meaning rule. However, Defendants immediately contradict themselves, writing "the air inlet of the Waerator is not connected to the injection tube *near* the upper end but rather *at* or *in* the upper end." (DE 206 at 16) (emphasis original).) But, as Defendants have already asserted, near also means at. The sentence could be written "the air inlet is not connected to the injection tube *at* the upper end but rather *at* the upper end." The absurdity of this argument is immediately obvious, and the Court will not further exhaust the issue.

For their definition of "opposite," Defendants again rely on the Merriam-Webster Dictionary. Those definitions, while a little overwrought from a language standpoint, are certainly workable as a starting point for plain meaning. However, Defendants have selected the most technical and restrictive of the dictionary definitions and argue they are the only "conceivable" meaning of the word opposite. (DE 206 at 19.) One such suggested definition requires the objects be "situated such that each is separate from the other by half the circumference of the axis of the injection tube." *Id*. But the Court is not persuaded this represents the only conceivable plain meaning of opposite. For example, Oxford Languages defines "opposite" as "having a position on the other or further side of something; facing something, especially something of the same type." Opposite Definition, *Oxford Languages*, *available at* Google. The diagram prepared by Defendants to illustrate the components clearly shows an air inlet *on the other or further side* of the spout, refuting their argument that no conceivable

definition of opposite embraces the position of the air inlet relative to the spout in the allegedly infringing device. While the Court does not formally adopt any definition of the words "near" or "opposite" for the purpose of this order or future proceedings of this case, the Court merely finds Defendants' new contentions collapse under cursory review; had they been subject to the full scrutiny of ongoing claim construction, they would have fared no better.

*(ii) These are construction arguments that would have been properly raised during the claim construction phase of the case.*

Defendants' reliance on strained definitions for directional terms throughout the new argument indicates these terms should have been subject to claim construction by the Court if there was a dispute about their meaning. *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011) (denying new construction after construction order where the party had the opportunity to seek construction previously and "said nothing"). Where a word's meaning is disputed, determining the meaning is part of the claim construction process even if the word takes its ordinary and customary meaning. *See TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004). The Court notes that attempts to define or re-define terms after claim construction are not necessarily improper; the Court has discretion to revisit claim construction as the case evolves. *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) ("As this court has recognized, district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."). This is appropriate when, for example, both parties disagree with the Court's claim construction, and the ongoing disagreements and possible improper construction will multiply confusion and complicate the

case, or when the earlier construction was clearly erroneous. *See, e.g.*, *Kenall Mfg. Co. v. Genlyte Thomas Grp. LLC*, 439 F. Supp. 2d 854, 862 (N.D. Ill. 2006) (rolling construction to clarify disputed terms); *LoggerHead Tools, LLC v. Sears Holding Corp*., 328 F. Supp. 3d 885, 898 (N.D. Ill. 2018) (rolling construction corrected prior erroneous construction). However, the Court may also consider whether ongoing construction will prejudice the opposing party. *See Velocity Pat. LLC v. FCA US LLC*, 319 F. Supp. 3d 950, 970 (N.D. Ill. 2018) (finding no prejudice in construing term consistently with other claims in the same action). As stated above, ongoing claim construction to assist the nine new contentions would greatly prejudice MercAsia by elongating the already-prolonged life of this case and setting the parties back unnecessarily. Therefore, the Court further finds that the prejudice would render ongoing claim construction of other terms improper, and the Court will properly "refuse to entertain" these untimely claim construction and infringement arguments. *See SanDisk Corp. v. Memorex Prod., Inc*., 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding district court's decision to exclude untimely disclosed claim construction and infringement arguments did not abuse its discretion).

### D.    Conclusion

For the reasons stated above, Court **GRANTS** in part the motion for summary judgment, finding air ports below the spout are not the equivalent of those above the spout as a matter of law; to all other issues, the Court **DENIES** Defendants' motion for summary judgment (DE 205).

SO ORDERED.

ENTERED: February 14, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

26